Thomas and Joan STOKES,
H/W, Appellees,

v.

GARY BARBERA ENTERPRISES,
INC., Appellant.

Superior Court of Pennsylvania.

Submitted May 14, 2001.

Filed Aug. 20, 2001.

Craig A. Sopin, Philadelphia, for appellant.

Chester T. Cyzio, Philadelphia, for appellees.

BEFORE: CAVANAUGH, HESTER and BECK, JJ.

HESTER, Judge:

¶ 1 Gary Barbera Enterprises, Inc. appeals the verdict entered by the court in this nonjury case. We affirm.

¶ 2 Thomas and Joan Stokes, Appellees, instituted this action against Appellant and Chrysler Corporation alleging that Appellant sold them a vehicle that it represented as new but actually was used. Appellees settled with Chrysler Corporation, and the matter proceeded to nonjury trial. The trial court concluded that Appellant had misrepresented to Appellees that they were purchasing a new car when, in fact, the car that they purchased was used. It assessed damages and entered an award of punitive damages pursuant to the Pennsylvania Uniform Trade Practices and Consumer Protection Act, 73 P.S. § 201–9.2(a). This appeal followed.

¶ 3 Appellant first assails the trial court's conclusion that the vehicle that it sold Appellees was used, challenging the sufficiency of the evidence supporting that conclusion. Our scope of review of a verdict entered in a nonjury case is limited to determining whether its factual findings are supported by the evidence and whether the court made a legal error. *Hester v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 743 A.2d 926 (Pa.Super.1999). The prevailing party is entitled to have all its evidence believed and is entitled to be given all reasonable inferences from that evidence. *Id.* When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province as are credibility determinations. *Lou Botti Construction v. Harbulak,* 760 A.2d 896 (Pa.Super.2000). Further, the court is free to choose to believe all, part, or none of the evidence presented. *Id.*

¶ 4 Under this standard, we look to the record to determine if there is any support for the court's determination that the vehicle sold to Appellees was used. Mr. Stokes testified as follows. On September 25, 1996, Appellees, who have four children, went to Appellant's dealership and stated that they wanted to purchase a new van. They decided to purchase a 1996 Dodge Caravan. Appellant's employee ran a credit check, and Appellees were approved for financing. They were told that they had to have $4,000 in cash in addition to the trade-in on the old van to qualify for the loan. Altogether, the purchase price was approximately $22,500. On the day of the van's purchase, Mr. Stokes noticed that the digital odometer was not illuminated so that he could not read its display. When he asked the salesman what the mileage was, the salesman responded that it was approximately seven miles or very low and that a new odometer was going to be installed. Mr. Stokes testified that the salesman represented to him that the van was new.

¶ 5 Appellees introduced documentation from the financing wherein it was represented that the van was new. Specifically, the documentation has blocks to be checked to indicate whether the vehicle to be financed is new, used, or a demo. The new block was checked. Appellees executed the financial documents and gave them to Appellant for processing. When Appellees' copy of the document was returned to them, it was altered. Specifically, despite the fact that the top portion indicated that the van was new and despite the salesman's representations, Appellant had typed on the document that the vehicle "may have been previously sold and returned." N.T., 01/19/00, at 23. Mr. Stokes testified that this typed language was not on the document when he executed it.

¶ 6 Three days later, Appellant's employee called Mr. Stokes and told him that the new odometer was at the dealership. Mr. Stokes returned to the dealership, the repairs were made, and the new odometer read that the van had six or seven miles on it. Mr. Stokes already noticed that the

transmission was not working smoothly and told the service department about the problem. He also was suspicious that the van was not new since the van smelled new when he bought it but the odor had disappeared by the time that he brought it in to have the odometer replaced.

¶ 7 Mr. Stokes asked the service manager, James Simone, if the van was new, and Mr. Simone responded that it was. However, Mr. Stokes overheard Mr. Simone talking to a mechanic. Mr. Simone said, "[Mr. Stokes] don't know it yet but he just bought Vai Sikahema's van," and, "[T]his fool thinks he's buying a new van but he's buying the one ... Vai Sikahema brought back." *Id.* at 42, 57. Mr. Sikahema used to play for the Philadelphia Eagles and was a local sports announcer. Mr. Stokes assumed that the van had been given to him and that he had returned it.

¶ 8 Appellant informed Mr. Stokes that there was nothing wrong with the transmission; however, Mr. Stokes took it to another mechanic and when the mechanic lifted the hood, Mr. Stokes saw that the engine did not look new. Twenty-five days after he purchased the van, Mr. Stokes contacted Appellant and told Gino Barbera, Gary Barbera's brother, that he wanted a new van. Gino initially told Mr. Stokes that he could have a new car but then retracted that promise, saying that he would have to pay an additional $4,000 for another van. Mr. Stokes refused. Mr. Stokes also testified that he had had to have the van repaired almost every month since its purchase. *Id.* at 73.

▮ ¶ 9 We view several facts established by this testimony as supporting the court's determination that the van was used: 1) the admission of Appellants' service manager that the van had been used

and returned[1]; 2) the alteration of the financial document; and 3) the fact that the odometer was not working when purchased. Hence, we affirm the trial court's conclusion in this regard.

▮ ¶ 10 Appellant also suggests that the evidence did not support the amount of damages awarded. In the present case, the trial court, the Honorable Joseph I. Papalini, calculated damages as follows:

Defendant contended that we erred in our calculation of actual damages awarded to Plaintiffs; that we should have ordered the return of the vehicle to Defendant; and we should have offset Plaintiffs' damages by the miles actually driven by Plaintiffs.

Our initial finding was that Plaintiffs were entitled to actual/compensatory damages in the amount of $21,736. This was based on our finding Plaintiffs had paid $396 per month for 38 months. We credited Plaintiffs with half that amount because of the difficulties they had had with the vehicle: $7,524. We added to that $8,712, the amount needed to pay off the finance company; $4,000, the down payment; and $1,500, the value of the trade-in.

Mr. Sopin, representing the Defendant, never requested the return of the vehicle in the event there was a substantial verdict in favor of Plaintiffs. (N.T. 192–93).

After post-verdict motions were argued, it was determined that on May 31, 2000, Plaintiffs had traded-in the van for a car. The purchase price of the car was $20,000. The trade-in credit on the van was $6,500. Counsel for Plaintiffs further stipulated that his clients' use of the van was worth an additional $4,000.

---

1. Mr. Simone denied making this statement; however, as noted above, the trial court was free to believe Mr. Stokes's testimony and to disbelieve that of Mr. Simone.

Accordingly, we reduced the verdict for actual/compensatory damages from $21,736 to $11,236.

The amount of actual/compensatory damages, $11,236 was a fair amount, supported by the evidence.

. . . .

Defendant claimed that there was no basis for our award of $26,048 in punitive damages.

Our award of "punitive damages" was based on the Pennsylvania Uniform Trade Practices and Consumer Protection Act, 73 P.S. § 201–9.2(a):

Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

In the case at bar, we found that Defendant knowingly ... represented an expensive van as new when Defendant knew that the van had been previously driven and was in fact a used vehicle. We found that the odometer had been intentionally manipulated by employees of Defendant, to hide the van's prior use. Finally, we found that the van was sold to Plaintiffs in poor working order.

Those findings were sufficient to support an award of treble damages under the act. See *Neff v. General Motors Corp.*, 163 F.R.D. 478 (E.D.Pa.1995); *Johnson v. Hyundai Motor America*, 698 A.2d 631 (Pa.Super.1997); *Hammer v. Nikol*, 659 A.2d 617 (Pa.Cmwlth.1995).

For the reasons set forth above, Defendant's Motion for Post Trial Relief was granted in part and denied in part.

However, after further review, we have determined that when we reduced the award of actual/compensatory damages, it was necessary to reduce the award for treble/"punitive damages" as well. Therefore, the original award for treble/"punitive damages" in the amount of $26,048 should be reduced to $22,472, twice the amount of the modified actual/compensatory damage award.

Trial Court Opinion, 2/2/01, at 6–8. There was no error.

¶ 11 Order affirmed.