

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-5-2004

# Samuel-Bassett v. Kia Mtr Amer Inc

Precedential or Non-Precedential: Precedential

Docket No. 03-1427

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Samuel-Bassett v. Kia Mtr Amer Inc" (2004). *2004 Decisions.* Paper 965.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/965

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

No. 03-1427

SHAMELL SAMUEL-BASSETT, on
behalf of herself and all others similarly
situated,

Appellees

v.

KIA MOTORS AMERICA, INC.,

Appellant
_____

APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF
PENNSYLVANIA
(D.C. Civ. No. 01-cv-00703 )
District Judge:  Hon. J. Curtis Joyner
_____

Argued November 3, 2003
Before:  McKEE, SMITH and WEIS,
Circuit Judges.

Filed February 5, 2004
_____

Joseph Kernen, Esquire (ARGUED)
Neal Walters, Esquire
Piper Rudnick, LLP
3400 Two Logan Square

18th and Arch Streets
Philadelphia, PA   19103

Attorneys for Appellant

Michael D. Donovan, Esq. (ARGUED)
David A. Searles, Esquire
Donovan Searles, LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA   19103

James A. Francis, Esquire
Francis & Mailman, P.C.
100 S. Broad Street, 19th Floor
Philadelphia, PA   19110

Alan M. Feldman, Esquire
Feldman Shepherd, Wohlgelernter &
Tanner
1845 Walnut Street, 25th floor
Philadelphia, PA   19103

Attorneys for Appellees

_____

OPINION

WEIS, Circuit Judge.

In this diversity removal
case involving a claim of a defect in an
automobile, the District Court adopted
the purchase price of the car as the
overriding factor in assessing the
jurisdictional amount in controversy.  No
allowance was made for the value of the
car with the defect, nor was any

1

reduction made for the plaintiff s use of the vehicle. Finding the record inadequate for determining the amount in controversy, we will remand for further proceedings.

The plaintiff purchased a model year 2000 KIA Sephia automobile on October 27, 1999. Dissatisfied with the performance of the car, she filed a class action against the manufacturer, Kia, in the Court of Common Pleas of Philadelphia County, Pennsylvania on January 17, 2001. The complaint alleges that because of a design defect in the braking system, plaintiff returned the car for repairs on five separate occasions between January 12, 2000 and August 22, 2000. In four instances, the brake rotors and pads had to be replaced even though the vehicle had been driven less than 17,000 miles.

Despite her requests for rescission of the purchase contract, or correction of the braking problem, she asserts the defendant failed to meet its obligations. The complaint asks for certification of a class consisting of Pennsylvania residents who purchased or leased KIA Sephia model automobiles in the years before she filed the suit.

The defendant removed the case to the Eastern District of Pennsylvania on February 12, 2001 asserting diversity between the parties and an amount in controversy exceeding $75,000. The District Court denied the plaintiff s motion to remand, rejecting her post-removal assertion that she did not seek damages in excess of $74,999. Samuel-Bassett v. Kia Motors Am., Inc.,

143 F. Supp 2d. 503 (E.D. Pa. 2001).

Following further proceedings, the Court certified a class consisting of residents of Pennsylvania who purchased or leased model years 1997-2001 KIA Sephia automobiles for personal, family or household purposes. Samuel-Bassett v. Kia Motors Am., Inc., 212 F.R.D. 271 (E.D. Pa. 2002). Pursuant to Federal Rule of Civil Procedure 23(f), we granted defendant s petition to appeal the class certification order.

I. Jurisdiction

Rule 23(f) provides that a Court of Appeals, in its discretion, may permit an appeal from an order of the District Court granting class certification. The scope of this review is a narrow one. See McKowan v. Lowe & Co., Ltd. v. Jasmine, Ltd., 295 F.3d 380, 390 (3d Cir. 2002)(the Advisory Committee notes "explicitly describe Rule 23(f) as not extending to any other type of order, even where that order has some impact on another portion of Rule 23").

Although the appeal in this case is limited to the certification issue, we are obliged to examine subject matter jurisdiction. Generally speaking, an interlocutory order on jurisdiction *per se* by the District Court is not appealable. Harrison v. Nissan Motor Corp. In USA, 111 F.3d 343, 347 (3d Cir. 1996). However, the fact that review under Rule 23(f) is restricted does not relieve the court from the duty of inquiry into its jurisdiction. See, e.g., Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986); Mitchell v. Maurer, 293

2

U.S. 237, 244 (1934); <u>Employers Ins. of Wausau v. Crown Cork & Seal Co.</u>, 905 F.2d 42, 45 (3d Cir. 1990). Even if the parties have not raised the issue, a Court of Appeals should examine its authority *sua sponte* during its review of the case. <u>See</u>, <u>e.g.</u>, <u>Medlin v. Boeing Vertol Co.</u>, 620 F.2d 957, 960 (3d. Cir. 1980); <u>Kessler v. Nat'l Enters.</u>, 347 F.3d 1076 (8th Cir. 2003) ($1,666,626.26 judgment vacated for lack of jurisdiction after three appeals on various issues).

In the case before us, the parties did not brief the amount in controversy, but did address the subject in supplemental submissions filed in response to our request. However, the parties would have us address the certification issue before scrutinizing subject matter jurisdiction. In <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 612 (1997), the Supreme Court concluded that because the class certification rulings were dispositive as to all parties it would address them first rather than the jurisdictional challenges. Some of the <u>Amchem</u> class members unquestionably satisfied the jurisdictional monetary floor. Thus, the certification issues common to all were logically antecedent and merited priority because they applied to all members of the class, whereas the question as to the amount in controversy concerned only some of the members.

The circumstances here are quite different and we will follow the usual sequence of looking first to subject matter jurisdiction, which in this case is based on diversity of citizenship. 28

U.S.C. § 1332. Our standard of review is plenary. <u>Packard v. Provident Nat'l Bank</u>, 994 F.2d 1039, 1044 (3d Cir. 1993).

Removal of cases from state to federal courts is governed by 28 U.S.C. § 1441. In diversity suits, the requirement of an amount in controversy exceeding $75,000 applies to removed cases as well as to litigation filed originally in the federal court. 28 U.S.C. § 1447(c) requires that, in removed cases, [i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

In <u>Meritcare Inc. v. St. Paul Mercury Insurance Co.</u>, 166 F.3d 214 (3d Cir. 1999), we reviewed many of our opinions addressing the amount in controversy issue. Therefore, we will only briefly summarize the principles set forth in that case. It is important to bear in mind that parties may not confer subject matter jurisdiction by consent. <u>See</u>, <u>e.g.</u>, <u>United States v. Griffin</u>, 303 U.S. 226, 229 (1938); <u>Liberty Mut. Ins. Co. v. Ward Trucking Corp.</u>, 48 F.3d 742 (3d Cir. 1995); <u>United Indus. Workers v. Gov't of the Virgin Islands</u>, 987 F.2d 162, 168 (3d Cir. 1993).

28 U.S.C. § 1441 is to be strictly construed against removal, <u>Boyer v. Snap-On Tools Corp.</u>, 913 F.2d 108, 111 (3d Cir. 1990), so that the Congressional intent to restrict federal diversity jurisdiction is honored. This policy has always been rigorously enforced by the courts. <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S.

283, 288 (1938).

## II. Standard of Review

The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court. See Packard, 994 F.2d at 1045. Articulation of the standard to be applied and the extent of the burden to meet that requirement have caused some disparity in District Court opinions within this Circuit.

In Irving v. Allstate Indemnity Co., 97 F. Supp 2d. 653, 654 (E.D. Pa. 2000), the District Court explained that "[c]ourts in the Third Circuit are unencumbered by consistency in their characterization of a defendant's burden of proving the amount in controversy on a motion to remand." In that case, the preponderance of the evidence standard was used.[1]

Other Courts have used a "reasonable probability" test, which requires the defendant to show that "a reasonable jury likely could value [the

plaintiff's] losses at over $75,000." Chaparro v. State Farm Ins. Co., 1999 WL 961035, at *3-4 (E.D. Pa. 1999). In International Fleet Auto Sales, Inc. v. National Auto Credit & Agency Rent-A-Car, 1999 WL 95258, at *4 n.7 (E.D. Pa. 1999), the District Court equated the "reasonable probability" standard to the "legal certainty" approach. Several District Courts have applied the legal certainty standard. See, e.g., McDonough v. Crum & Forster Pers. Ins., 1992 WL 114951, at *3 (E.D. Pa. 1992).[2]

The Middle District of Pennsylvania has employed a two-step process involving both parties. See Orndorff v. Allstate Ins. Co., 896 F. Supp. 173, 175 (M.D. Pa. 1995)(adopting the approach taken by De Aguilar v. Boeing Co., 47 F.3d 1404, 1412 (5th Cir. 1995)). Under this formula, if the defendant establishes a basis for

---

[1] Opinions in other District Court cases filed within this Circuit have followed the preponderance standard. See, e.g., Carrick v. Sears, Roebuck and Co., 252 F. Supp 2d. 116, 119 (M.D. Pa. 2003); Fosbenner v. Wal-Mart Stores, Inc., 2001 WL 1231761 (E.D. Pa. 2001); Kobaissi v. Am. Country Ins. Co., 80 F. Supp 2d. 488, 489 n.2 (E.D. Pa. 2000); McFadden v. State Farm Ins. Co., 1999 WL 715162 (E.D. Pa. 1999); Imperial Spirits, USA, Inc. V. Trans Marine Int l Corp., 1999 WL 172292 (D. N.J. 1999); Garcia v. Gen. Motors Corp., 910 F. Supp. 160, 165 (D. N.J. 1995).

[2] See also, e.g., Johnson v. Costco Wholesale, 1999 WL 740690, at *2 (E.D. Pa. 1999); McNamara v. Philip Morris Cos., 1999 WL 554592, at *2 (E.D. Pa. 1999); Hunter v. Greenwood Trust Co., 856 F. Supp. 207, 219-220 (D. N.J. 1992); Carson v. ITT Hartford Ins. Group, 1991 WL 147469 (E.D. Pa. 1991). See also Earley v. Innovex (N. Am.) Inc., 2002 WL 1286639, at *2 (E.D. Pa. 2002)(noting that judges of the Eastern District of Pennsylvania have applied a preponderance of the evidence standard but explaining that [a]n action may not be remanded to state court unless it is apparent to a legal certainty that the plaintiff s claim cannot meet the amount in controversy requirement. ).

asserting that the requisite amount in controversy has been met, the plaintiff must then prove "to a legal certainty that the claim is really for less than the jurisdictional amount" in order to support remand. Id.

Other versions have included: (1) the District Court "make[s] an independent appraisal of the value of the claim," Neff v. Gen. Motors Corp., 163 F.R.D. 478, 482 n.5 (E.D. Pa. 1995)(citing Angus v. Shiley Inc., 989 F.2d 142, 146 (3d Cir. 1993)); Bishop v. Gen. Motors Corp., 925 F. Supp. 294, 299-300, 300 n.6 (D. N.J. 1996)(utilizing a similar standard); (2) adoption of the inverted legal certainty approach, in which the defendant must prove to a legal certainty that the plaintiff's damages are not less than $75,000, DiTullio v. Universal Underwriters Ins. Co., 2003 WL 21973324, at *3-*4 (E.D. Pa. 2003); and (3) remanding a case "because ambiguity exists and doubt remains regarding the sufficiency of the amount in controversy." Stuessy v. Microsoft Corp., 837 F. Supp. 690, 692 (E.D. Pa. 1993).

Many of the variations are purely semantical and we have found no case where the result would have been different had one of the variations described been used. However, we think it would be helpful if consistent language were used by the District Courts within this Circuit.

The Supreme Court has discussed the nature of a defendant's burden of proof in a removal case. In St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 (1938) the plaintiff, in seeking a remand to the state court, amended the complaint after removal to allege damages less than the federal jurisdictional amount. The Court stated that the rule for determining whether the case involves the requisite amount as whether from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount. Id. at 289. If not, the suit must be dismissed.

Some courts have found inconsistencies between Red Cab and McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178 (1936). In the latter case, the Supreme Court held that the party alleging jurisdiction [must] justify his allegations by a preponderance of the evidence. McNutt, 298 U.S. at 189. In that case, although a challenge to the amount in controversy had been raised in the pleadings, no evidence or findings in the trial court addressed that issue. In that respect, Red Cab differs because these factual findings had been made.

Rather than reading articulations of the standard as variations, we believe that the holdings in these two cases may be reconciled. In many instances the amount in controversy will be determined in whole or in part by state law. For example, if state law denies recovery for punitive damages, the federal court would be required to disregard the value of such a claim

5

asserted to be included within the jurisdictional amount.  See Packard, 994 F.2d at 1046.  In deciding applicable state law, the preponderance of the evidence standard would have no utility.

In many cases, however, disputes over factual matters may be involved.  In resolving those issues, the McNutt preponderance of the evidence standard would be appropriate.[3]  Once findings of fact have been made, the court may determine whether Red Cab s legal certainty  test for jurisdiction has been met.

In short, despite the use by some courts of such phrases as "more likely than not," "substantial likelihood," and "reasonable probability,"[4] we recommend that when the relevant facts are not in dispute or findings have been

---

[3]  A pretrial ruling on jurisdictional facts should not be made if it constitutes a decision on the merits.  See Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 537-38 (1995); Jaconski v. Avisun Corp., 359 F.2d 931, 935 (3d Cir. 1966); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure §1350 (2d ed. 1990).

[4]  See Gafford v. Gen. Elec. Co., 997 F.2d 150 (6th Cir. 1993) (reviewing various tests used by courts).  See also Alice M. Noble-Allgire, Removal of Diversity Actions When the Amount in Controversy Cannot be Determined from the Face of Plaintiff s Complaint: The Need for Judicial and Statutory Reform to Preserve Defendant s Equal Access to Federal Courts, 62 Mo. L. Rev. 681 (1997).

made the District Courts adhere to the "legal certainty" test cited in such cases as Meritcare, 166 F.3d 214; Packard, 994 F.2d 1039; Bloom v. Barry, 755 F.2d 356 (3d Cir. 1985); and Nelson v. Keefer, 451 F.2d 289 (3d Cir. 1971).

We recognize that requiring a defendant to show to a legal certainty that the amount in controversy exceeds the statutory minimum may lead to somewhat bizarre situations.  As the Court observed in Shaw v. Dow Brands, Inc., 994 F.2d 364, 366 (7th Cir. 1993), oral argument presented a  comic scene: plaintiff s personal injury lawyer protests up and down that his client s injuries are as minor and insignificant as can be, while attorneys for the manufacturer paint a sob story about how plaintiff s life has been wrecked.  It would not be a surprise that when the time came for assessment of damages the parties would once again switch their views by some 180 degrees.

Because of the manner in which the claims for damages were stated in the complaint here, the District Court was required to apply state law in converting the categories to monetary sums.  See Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 352-53 (1961) (In diversity cases courts must look to state law to determine the nature and extent of the right to be enforced).  In fairness to the District Court, our review of the record indicates that the parties did not provide much assistance in this endeavor.

Having concluded that the legal certainty test is appropriate, we turn to the jurisdictional problem.  In her

6

motion to remand, plaintiff contended that the complaint filed in the state court established that her claims did not meet the required amount of $75,000. Although this was the plaintiffs clearly stated position, it did not resolve the jurisdictional issue because the defendant has a right to resort to a federal forum if it can establish that the jurisdictional requirements have been satisfied. See, e.g., Red Cab, 303 U.S. at 294.

### III. Scope of Damages

In removal cases, determining the amount in controversy begins with a reading of the complaint filed in the state court. Unlike many instances in which a specific amount is requested, the *ad damnum* clause in this complaint is stated in terms of categories of damages. Because the diversity statute speaks in terms of dollars, we must translate the categories plaintiff cites into monetary sums.

Count I of the complaint alleges that the defendant violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the Consumer Protection Law ). Pa. Stat. Ann. tit. 73 § 201-9.2(a) (West 2003). The statute allows recovery of actual damages and reasonable attorneys fees, treble damages and such additional relief as [the court] deems necessary or proper. Id. Because this claim offers the highest potential recovery to the plaintiff, we will discuss it first.

The plaintiff sought damages for loss of value of the car, depreciation in resale value, repair costs, expense of repair attempts, loss of use, treble damages, and attorneys fees. In the alternative, she sought to rescind the contract.

In calculating the damages recoverable under the statute, the District Court began with the base purchase price of the automobile, $13,370, and added registration, title and filing fees, sales tax, service contract cost and expenses of financing to reach a total of $22,095. Samuel-Bassett, 143 F. Supp 2d. at 507. The Court concluded that giving the damages claims the broadest possible reading and trebling the $22,095 which Plaintiff is obligated to pay for her automobile over five years in addition to attorneys fees and out-of-pocket expenses, would clearly total an amount in excess of $75,000. Id. The District Court did not explain the computation underlying its conclusion.

The Consumer Protection Law does not specify how actual damages should be measured and we therefore turn to relevant state appellate rulings. The Pennsylvania Supreme Court has not yet had the occasion to interpret the statutory term. The Superior Court, an intermediate appellate court, has utilized the purchase price of a vehicle as a starting point for calculating damages. From that amount, various sums have been deducted to arrive at the actual damages. See Stokes v. Gary Barbera Enters., 783 A.2d 296, 299 (Pa. Super. Ct. 2001); Young v. Dart, 630 A.2d 22, 26 (Pa. Super. Ct. 1993).

In Stokes, the plaintiff proved that the car dealer had tampered with the odometer and misrepresented

7

that a van was new. <u>Stokes</u>, 783 A.2d at 297. In determining the damage award, the trial court began with the amount of monthly payments made by the plaintiff and added the down payment, the value of the trade-in and the amount necessary to pay off the loan. <u>Id.</u> at 298. From this total the following amounts were subtracted: (1) half of the monthly payments the plaintiff had made (to reflect usage), (2) an additional $4000 for usage and (3) a trade-in credit that the plaintiff received for the van when he purchased a new car. <u>Id.</u> The Superior Court affirmed. <u>Id.</u> at 299.

In <u>Young v. Dart</u>, the plaintiff purchased a car from a dealer who concealed the fact that the vehicle had been involved in a collision and had numerous hidden defects. <u>Young</u>, 630 A.2d at 23. Recognizing that the Consumer Protection Law "does not set forth a formula for the assessment of actual damages," the Superior Court held that the trial court did not err by looking to the method used under the Automobile Lemon Law. <u>See id.</u> at 26-27. <u>See also</u> Pa. Stat. Ann. tit. 73 § 1955 (West 2003). The trial court used the $12,800.68 purchase price as a starting point, and subtracted $4,858.20 for Young's usage between the date of purchase and the trial, as well as requiring the return of the car. <u>Young</u>, 630 A.2d at 27. The plaintiff was also awarded some minor consequential damages.

In <u>Suber v. Chrysler Corp.</u>, 104 F.3d 578 (3d Cir. 1997), we were faced with somewhat similar issues under the New Jersey Consumer Fraud Act. In that case, we remanded for reevaluation of the plaintiff s loss under the state s Lemon Law. <u>Id.</u> at 588-89. The District Court in <u>Suber</u> began and ended its analysis with the sticker price of the van. We noted that under the Lemon Law a claimant was required to return the car and that because the value of the vehicle had not been established, the issue should be reviewed on remand. <u>Id.</u> at 585 n.7. We recognize that in discussing damages, <u>Suber</u> was applying New Jersey law, not the Pennsylvania Consumer Protection Law, and, hence, is not determinative here.

In <u>Werwinski v. Ford Motor Co.</u>, 286 F.3d 661, 668, 670 (3d Cir. 2002), the panel concluded that defendant had established removal jurisdiction in a case where the plaintiffs complained that their automobile had a defective transmission. The Court pointed out that the plaintiffs sought to recover compensatory damages and in addition all or part of the sums [plaintiffs] paid to purchase or lease their automobiles. <u>Id.</u> at 666. Moreover, plaintiffs demanded that the defendant disgorge its ill-gotten profits received from the sale of the subject vehicles and/or make full restitution. <u>Id.</u> at 667. The Court concluded, because of these provisions, the complaint clearly leaves the door open for them later to demand reimbursement for the purchase price of the cars. <u>Id.</u>

We observe that in the briefs in that case the parties cited four district court opinions and did not call the panel s attention to the two Superior

8

Court cases interpreting relevant aspects of the Consumer Protection Law. District court rulings on Pennsylvania law are not authoritative and must yield to rulings of the state Supreme Court or, if none exist, consider decisions of the state s intermediate appellate courts in predicting how the state s highest court would rule. Gares v. Willingboro Township, 90 F.3d 720 (3d Cir. 1996). In any event, the plaintiffs complaint in the case before us does not contain the additional claims for damages which Werwinski relied upon in finding that the jurisdictional amount had been met.

### IV. The Consumer Protection Law Claim

As noted earlier, the District Court here began its computations under the Consumer Protection Law[5] by assuming that the

---

[5] The order certifying the class also dismissed Count I. The District Court cited the Werwinski ruling that the economic damages doctrine barred recovery under the Consumer Protection Law. The dismissal is interlocutory and is not before us in view of the limited review under Rule 23(f).

Application of the economic loss doctrine to claims under the Consumer Protection Law has been questioned. The Pennsylvania Supreme Court has not addressed the issue. In O Keefe v. Mercedes-Benz USA, LLC, 214 F.R.D. 266, 277 (E.D. Pa. 2003), the District Court observed that the Superior Court, post-Werwinski, had approved treble damages under the Consumer Protection Law. In Debbs v. Chrysler Corp., 810 A.2d 137,

"total sales price" of $22,095 was a beginning point. Samuel-Bassett, 143 F. Supp 2d. at 508. This figure included the price of the car, financing charges, sales tax, license, title and filing fees, as well as a service contract. Id. In addition, the Court referred to, but did not cite specific amounts of such expenses as costs as repairs, rental cars and attorneys' fees. Id. The District Court concluded that, considering these unquantified costs and trebling the price of the car, the plaintiff's recovery "would clearly total an amount in excess of $75,000." Id.

---

164-65 (Pa. Super. Ct. 2002), the Superior Court, noting Werwinski s holding, stated we specifically decline to address Chrysler s invitation to address two particularly vexing questions: (1) application of the economic loss doctrine . . . Pennsylvania trial courts have rejected Werwinski s prediction that the Pennsylvania Supreme Court would apply the economic loss rule in claims under the Consumer Protection Law. See, e.g., Oppenheimer v. York Int'l, 2002 WL 31409949, at *5 (Pa. Com. Pl. 2002); Zwiercan v. Gen. Motors Corp., 2002 WL 31053838, at *7 (Pa. Com. Pl. 2002). See also Balderston v. Medtronic Sofamor Danek, Inc., 285 F.3d 238, 242 (3d Cir. 2002) ("[i]n construing claims under the CPL, Pennsylvania courts have distinguished purchases made for business reasons which are not actionable from those made for 'personal, family or household use.'").

Of course, in this case if the District Court s re-assessment of plaintiff s damages results in an amount less than $75,000, as seems likely, then the Werwinski ruling need not be addressed.

9

Conspicuously absent from the calculation were deductions for the value of the car and allowance for its use reductions applied by the Superior Court of Pennsylvania in similar cases. In the plaintiff s complaint she seeks out-of-pocket reimbursement of repairs but no amounts were stated. In this connection, it would appear that if the expense of a service contract is considered as an item of loss, the amounts paid for repairs covered by the terms of that agreement should not be considered as actual damage to the plaintiff.

The fact remains that the amount in controversy has not been properly established. The computations here are inadequate and fail to conform with the Pennsylvania statutory language of actual damages as applied by the state appellate court. Although the damages conceivably could be trebled, the record does not establish the multiplicand for such an award.

Some observations may be helpful on remand. Rescinding the contract apparently would provide plaintiff with the most advantageous result because it would place her in the same position she was in before purchasing the vehicle. That remedy would require plaintiff to return the vehicle to the dealer, who should assume the outstanding balance of the loan. Defendant would pay plaintiff the total amount of installment payments made by her, the out-of-pocket repair costs that she incurred, and incidental expenses. From this sum must be subtracted a reasonable amount to reflect the plaintiff's usage of the vehicle. To test the upper limits of the range for the jurisdictional amount, Angus v. Shiley, Inc., 989 F.2d 142, 146 (3d Cir. 1993), the resulting computation may be trebled under the Consumer Protection Law. Metz v. Quaker Highlands, Inc., 714 A.2d 447 (Pa. Super. Ct. 1998) (treble damages may be awarded in a rescission case).

Attorneys fees awarded under the Consumer Protection Law are to be reasonable. Pa. Stat. Ann. tit. 73 § 201-9.2(a). As the Superior Court has explained in McCauslin v. Reliance Finance Co., 751 A.2d 683, 686 (Pa. Super. Ct. 2000), [t]he term reasonable does impart a sense of proportionality between an amount of damages and an award of attorneys fees. [6] We also point

---

[6] We are impressed with the New Jersey Superior Court s appraisal of the value of a case in certifying a class action involving the brakes on the same model of Kia cars. According to the Court:

> [T]he evidence here is that for the repair of a brake system of this nature, you re speaking in terms of a few hundred dollars. Nothing even coming close to $1,000. How many of the 8,455 members would seek, individually, to claim recompense of that small sum? To ask the question, I think answered in terms of qualification. Little v. KIA Motors of America ,UNN-L-

out that under the Consumer Protection Law no punitive damages other than the discretionary authority to treble is permitted. <u>McCauslin</u>, 751 A.2d at 685 ( although the Act does allow the Court to impose up to treble damages for actual damages sustained, it does not otherwise confer a right to punitive damages. ).

The counts presented by the plaintiff appear to be in the alternative and the parties have not suggested that, expect for the trebling provided by the Consumer Protection Law, there can be more than one recovery for the harm. Although Count I would seem to be the one to offer the most, although questionable, potential to reach the $75,000 mark, we shall briefly discuss the other claims.

### V. The U.C.C. Claim

Under Pennsylvania law the measure of damages for breach of warranty under the Uniform Commercial Code is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. 13 Pa. Cons. Stat. Ann. § 2714(b) (West 2003).

In addition to actual damages, plaintiffs may also recover incidental and consequential damages resulting from a breach of warranty. 13

_____

800-01 (N.J. Super. Ct. Law Div. filed August 20, 2003).

Pa. Cons. Stat. Ann. §§ 2714(c), 2715, 2A519(d). However, punitive damages are not recoverable in an action based solely on breach of contract. <u>Thorsen v. Iron & Glass Bank</u>, 476 A.2d 928, 932 (Pa. Super. Ct. 1984); <u>Johnson v. Hyundai Motor Am.</u>, 698 A.2d 631, 639 (Pa. Super. Ct. 1997).

The purchase price of a motor vehicle serves as *prima facie* evidence of value, but standing alone, as it does here, does not provide sufficient data to establish value. <u>Price v. Chevrolet Motor Div. of Gen. Motors Corp.</u>, 765 A.2d 800, 811 (Pa. Super. Ct. 2000). The record before us fails to establish the value of the automobile with and without the brake defect. Even adding consequential damages to a conjectural estimate of value here fails to establish anything near $75,000. Accordingly, the breach of warranty count fails to provide federal court jurisdiction.

### VI. The Magnuson-Moss Warranty Improvement Act

The Magunson-Moss Act provides that a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract may bring suit for damages and other legal and equitable relief. 15 U.S.C. § 2310(d)(1) (2003).

Suit may be filed in state or federal court. <u>Id.</u> However, federal jurisdiction for a Magnuson-Moss Act claim does not exist unless the amount in

11

controversy exceeds $50,000, and, if the suit is brought as a class action, the number of named plaintiffs is at least 100. 15 U.S.C. § 2310(d)(3).

In Voelker v. Porsche Cars North America, Inc., 348 F.3d 639, 643 (7th Cir. 2003), an automobile warranty case, the Court of Appeals said that the party asserting federal jurisdiction must allege the cost of the replacement vehicle, minus both the present value of the allegedly defective vehicle and the value that the plaintiff received from the allegedly defective vehicle. The facts in that Magnuson-Moss case differ from those present here, but the requirements of allowance for usage and establishing the difference in value, rather than simply the purchase price are the same.

Treble damages may not be assessed in a Magnuson-Moss count. Nor may attorneys fees be recovered. Suber, 104 F.3d at 588 n.12. It is clear that the amount recoverable under the claim here does not exceed $50,000 and this case cannot be maintained in the federal courts on an independent jurisdictional basis. There is no need to address supplemental jurisdiction at this point.

By way of equitable relief, plaintiff asks that members of the putative class be notified and warned about the brake system defect. Because we must look to the jurisdictional status of the named plaintiff, it is obvious that injunctive relief is not appropriate.

## VII. Conclusion

We conclude that the case must be remanded to the District Court for fact-finding on the amount in controversy. We repeat the admonition expressed in our case law that in order to carry out the Congressional intent to limit jurisdiction in diversity cases, doubts must be resolved in favor of remand. See, e.g., Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990); Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985). Moreover, estimations of the amounts recoverable must be realistic. The inquiry should be objective and not based on fanciful, pie-in-the-sky, or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated.

Accordingly, the order of certification will be vacated and the case remanded to the District Court for a determination of subject matter jurisdiction.

12