**Martin L. DUNSON and Lisa M. Jones, Plaintiffs,**

v.

**MCNEIL–PPC, INC., et al., Defendants.**

**No. Civ.A. 04–2020.**

United States District Court, E.D. Pennsylvania.

Nov. 16, 2004.

David F. Binder, Raynes McCarty Binder Ross & Mundy, Philadelphia, PA, for Plaintiffs.

Laurie E. Waddy, Dechert LLP, Philadelphia, PA, for Defendants.

## MEMORANDUM

ROBRENO, District Judge.

Plaintiffs, Martin L. Dunson and Lisa M. Jones filed the complaint in this products liability action in the Court of Common Pleas of Philadelphia County against McNeil–PPC, Inc., McNeil Consumer Healthcare Division of McNeil–PPC, Inc., and McNeil Consumer & Specialty Pharmaceuticals, a division of Johnson & Johnson, Inc. The plaintiffs allege that the defendants' "Infants' Tylenol" product caused the death of their one year old son.

Defendants removed the case to this Court alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332. The plaintiffs have moved to remand the action contending that there is no diversity because the plaintiffs and the defendant are citizens of Pennsylvania. Presently before the Court is the plaintiffs' motion to remand.[1]

McNeil Laboratories, Inc. was acquired by Johnson & Johnson in 1959. It was later merged with Personal Products Corporation, another Johnson & Johnson company, at which time the name was changed to McNeil–PPC, Inc. (hereinafter "McNeil–PPC"). McNeil–PPC is a New Jersey corporation with four unincorporated divisions that include: (1) the McNeil Consumer & Specialty Pharmaceuticals Division (the "McNeil Division"), which makes the Tylenol product that is the subject of the lawsuit and which is headquartered in Pennsylvania; (2) the McNeil Nu-

---

1. This Court permitted the defendants to amend their notice of removal. It is thus the averments contained in the amended notice of removal that are before the Court in this motion.

tritionals Division which has administrative offices in New Jersey and Pennsylvania; (3) the Personal Products Company Division which is located in New Jersey; and (4) the Personal Products Worldwide Division which is also located in New Jersey. The location of McNeil–PPC's principal place of business is at issue. If McNeil–PPC's principal place of business is Pennsylvania, McNeil–PPC will be deemed a citizen of Pennsylvania destroying diversity and requiring the case to be remanded.

■ Federal "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987); *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). This is so because "lack of subject matter jurisdiction voids any decree entered in a federal court and the continuation of litigation in a federal court without jurisdiction would be futile." *Steel Valley Auth.*, 809 F.2d at 1010. The Third Circuit has interpreted this "all doubts" principle to mean that so long as "there is any

doubt as to the propriety of removal, [the] case should not be removed to federal court." *Brown v. Francis*, 75 F.3d 860, 865 (3d Cir.1996).[2] The burden of proof is on the party removing the case to show the presence of federal jurisdiction. *Abels*, 770 F.2d at 29.[3]

■ Section 1332(a)(1) of Title 28 of the United States Code, the diversity statute, "requires complete diversity between the parties—that is, jurisdiction is lacking if any plaintiff and any defendant are citizens of the same state." *Mennen Co. v. Atl. Mut. Ins. Co.*, 147 F.3d 287, 290 (3d Cir. 1998) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)). Here, the plaintiffs are citizens of Pennsylvania. The question of McNeil–PPC's citizenship, however, must be resolved.

For purposes of determining whether there is diversity of citizenship, a corporation is deemed a citizen of both the State in which it was incorporated and the State "where it has its principal place of business." 28 U.S.C. § 1332(c)(1). While it is not in controversy that the defendant is a

---

**2.** The Third Circuit in *Cook v. Wikler*, 320 F.3d 431 (3d Cir.2003), recently cautioned that district courts should not rely exclusively on the "supposed 'presumption' in favor of remand" because such a presumption is "a questionable doctrine whose 'basis has never been very clearly explained.'" *Id.* at 436 n. 6 (citing *Thomas v. Shelton*, 740 F.2d 478, 488 (7th Cir.1984)). At least one district judge postulated that what the Third Circuit is cautioning against in *Cook* is adherence to the presumption against remand in lieu of a more rigorous analysis of the text and context of the removal statute. *Carrick v. Sears, Roebuck and Co.*, 252 F.Supp.2d 116, 119 (E.D.Pa. 2003), *overruled on other grounds by, Samuel–Bassett v. KIA Motors Am.*, 357 F.3d 392 (3d Cir.2004). In this light, the Court has not relied simply on any presumption against removal or in favor of remand but rather has analyzed closely the basis for jurisdiction asserted in the notice of removal.

**3.** Specifically, with respect to the defendant's burden, until recently the Third Circuit had not specifically addressed the applicable standard of proof in a removal case. As a result, the lower courts in this Circuit have applied varying standards. *Samuel–Bassett*, 357 F.3d at 396. Some courts have applied a preponderance of the evidence standard, others a legal certainty standard, while yet others a reasonable probability standard. *Id.* at 396– 97. Significantly, the Third Circuit, finding that "many of the variations are purely semantical," claimed to "have found no case where the result would have been different had one of the variations described been used." *Id.* at 397. This appears to be the case here. Since as discussed below, McNeil–PPC, the party asserting jurisdiction, cannot satisfy its burden by even the most relaxed standard of the preponderance of the evidence, the Court needs not decide whether a heavier burden or more rigorous standard is applicable to removal actions.

New Jersey corporation, the location of the defendant's principal place of business is at issue. Plaintiffs argue that the defendant's principal place of business is Pennsylvania while defendant McNeil–PPC argues that its principal place of business is either New Jersey, or at least not Pennsylvania.

■ The Third Circuit "employs the 'center of corporate activities' test to determine a corporation's principal place of business." *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.,* 357 F.3d 375, 382 n. 5 (3d Cir.2004). *See generally* 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3625 (2d. ed. 1984 & Supp. 2004). This test, adopted in *Kelly v. U.S. Steel Corp.,* 284 F.2d 850 (3d Cir.1960), "requires courts to ascertain 'the headquarters of day-to-day corporate activity and management.'" *Mennen,* 147 F.3d at 291 (citing *Kelly,* 284 F.2d at 854). *Kelly* held that "it is the 'business by way of *activities* ... [that] indicate the principal place of business.'" *Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Mgmt., Inc.,* 316 F.3d 408, 411 (3d Cir.2003) (citing *Kelly,* 284 F.2d at 854) (emphasis in original). In other words, "a corporation's principal place of business is not 'where ... final decisions are made on corporate policy,' but rather where the corporation 'conducts its affairs.'" *Id.* at 411 (citing *Kelly,* 284 F.2d at 854).[4]

■ Addressed first here, is the most significant *Kelly* factor, the location of "headquarters of the day-to-day corporate activities and management decisions." *Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.,* 461 F.2d 1140, 1143 (3d Cir.1972). Although according to McNeil–PPC three New Jersey managerial employees, who comprise the board of

---

4. In *Mennen,* the Third Circuit provided a detailed synopsis of the center of corporate activities analysis employed by the *Kelly* court:

> In *Kelly,* this court was called on to determine the principal place of business of the "giant" (284 F.2d at 854) United States Steel Corporation, which ... had fourteen divisions and eleven subsidiaries and whose "various manufacturing activities spread over practically all the United States and extend[ed] to foreign countries." *Id.* at 853. The plaintiffs in *Kelly*—seeking to overturn dismissals for lack of diversity jurisdiction—had urged a " 'nerve center' " approach, according to which the locus of the board of directors' final decision-making authority would be determinative of the defendant corporation's principal place of business. Speaking through Judge Goodrich, the court characterized plaintiffs' proposed test as "a pleasant and alluring figure of speech," but then turned "to a consideration of the facts of the Steel Corporation's life." *Id.* Applying that pragmatic approach, the court noted that final authority over "corporate policy, including its financing," rested with the board in New York, but that the board had delegated "the duty of conducting the business of the corporation relating to manufacturing, mining, transportation and general operation" to an "Operation Policy Committee," consisting of the board chairman, the president, the seven executive vice presidents and certain other principal officers, "which sits and conducts its affairs" in Pennsylvania. *Id.* at 854. Further, the court pointed out that the seven executive vice presidents, sixteen of the seventeen administrative vice presidents, and twenty-two of the twenty-five vice presidents had their offices and staffs in Pennsylvania. Consequently, the court identified Pennsylvania as the state in which the corporation's "business by way of activities is centered." *Id.*
>
> The Kelly court also looked to factors such as "physical location of employer's plants and the like"—factors which, while of "lesser importance," were of "some significance" when "added to the items already enumerated pointing to the center of corporate activity." *Id.* Specifically, the court noted that Pennsylvania had approximately a third of the company's personnel, tangible property, and productive capacity—far more than New York and, apparently, more than any other state. *Id.*

*Mennen,* 147 F.3d at 291.

directors of McNeil–PPC, have been delegated responsibility for managing McNeil–PPC's operations as a whole, others are responsible for managing significant portions of McNeil–PPC's day-to-day operations. For instance, according to the deposition of Thomas Lapinski, vice president of North American operations for the McNeil Division, which is McNeil–PPC's largest division in terms of number of employees and net sales (59%) and which makes the Tylenol product that is the subject of the lawsuit, the McNeil Division has approximately 12 vice presidents and a president, all with offices located in Fort Washington, Pennsylvania. (Lapinski Dep. at 7.) Also according to Mr. Lapinski, the McNeil Division has a plant manager with an office in Fort Washington, Pennsylvania who "has overall responsibility for the employees, the workforce, the production planning and the actual manufacturing of the products [the McNeil Division] made." (Lapinsky Dep. at 17–18.) The plant manager has "major responsibility for the conversion process of raw materials to finished goods." (Lapinsky Dep. at 19.)

Also weighing in favor of Pennsylvania as the headquarters of McNeil–PPC's day-to-day corporate activities and management decisions is the fact that the McNeil Nutritionals Division, which has offices in both New Jersey and Pennsylvania, has its administrative center in Fort Washington, Pennsylvania. (Lapinsky Dep. at 11.) McNeil Nutritionals Division accounts for another 4% of McNeil–PPC's total sales. The office of the president of McNeil Nutritionals Division is also located in Fort Washington, Pennsylvania. (Lapinsky Dep. at 11.)[5]

Consideration of the other *Kelly* factors lends additional support to the finding that Pennsylvania is McNeil–PPC's principal place of business. With regard to physical location of McNeil–PPC's operations, although two of McNeil–PPC's four unincorporated divisions are located in New Jersey, the McNeil Division, which is the largest division in terms of number of employees and net sales, has administrative offices and a manufacturing facility in Pennsylvania. Further, the McNeil Nutritionals Division has recently moved a substantial portion of its administrative operations and employees from New Jersey to Pennsylvania.

With regard to where the McNeil–PPC workforce is located, a majority (51%) of its roughly 3,410 employees are located in Pennsylvania. Only 267 employees are located in New Jersey.

With regard to the value of real estate and tangible property, the 2003 book value of real estate owned by McNeil–PPC in

---

**5.** In *Kelly*, the Third Circuit listed as relevant to its decision regarding the location of headquarters of United States Steel Corporation's day-to-day corporate activities and managerial decisions the fact that "almost thirty-four percent of the employees classified as exempt under the Fair Labor Standards Act (29 U.S.C. § 201 et seq.) [were] located" in Pennsylvania. 284 F.2d at 854. It does not appear that there is much utility in classifying employees in this manner for purposes of conducting modern day center of corporate activities analysis since it is not clear what role exempt versus non-exempt employees may play in managing the day-to-day operations of a corporation. Courts performing center of corporate activities analysis since *Kelly* have not focused on this factor. Further, in *Mennen*, in which the Third Circuit provided a detailed review of the *Kelly* decision, the Third Circuit did not even mention that classification of exempt employees was a factor considered by the *Kelly* Court. To the extent that the location of the employees classified as exempt under the Fair Labor Standards Act has any significance in modern day center of corporate activities analysis, McNeil–PPC has 946 such employees in Pennsylvania while only 209 such employees in New Jersey.

Pennsylvania is $124,577,783 and the value of tangible property owned in Pennsylvania is $217,803,693. In New Jersey, on the other hand, the 2003 book value of real estate owned is $23,412,963, less than one fifth of the value of real estate owned in Pennsylvania, and the value of tangible property owned is $39,809,397, less than one fifth of the value of tangible property owned in Pennsylvania.

With regard to productive capacity, the McNeil Division accounted for approximately 59% of the net sales of McNeil–PPC. In addition, McNeil Nutritionals Division, which administrative center is in Pennsylvania, is responsible for another 4% of the net sales for McNeil–PPC in 2003.[6] McNeil–PPC's other two divisions located in New Jersey only accounted for a total of 25% of the net sales of McNeil–PPC in 2003. While it may be true that not all products sold by McNeil–PPC's Pennsylvania divisions were manufactured in Pennsylvania, approximately 15% of all products sold by McNeil–PPC were manufactured there.

There are yet two more factors that militate against the defendant's position that New Jersey, or at least not Pennsylvania, is its principal place of business. With regard to taxes, McNeil–PPC pays taxes in 28 states and those taxes are apportioned upon a three factor basis that takes into consideration (1) number of employees located in the state, (2) assets located in the state, and (3) sales sold in the state. Keeping in mind that states weigh the three factors differently (e.g. Pennsylvania triple weighs the sales factor), the 2002 Pennsylvania Corporate Income Tax Apportionment Factor for McNeil–PPC was 24.2912% while the New Jersey Corporate Income Tax Apportionment Factor was 10.8753%.

Finally, with regard to storage of key documents relating to this litigation, McNeil–PPC has indicated that such documents are housed at either the McNeil Division in Pennsylvania or with the FDA in Washington, D.C. and not in New Jersey.[7]

On the other hand, it is true that the three executives who comprise the McNeil–PPC board of directors and who exercise overall policy-making responsibility are located in New Jersey. But as counsel for McNeil–PPC acknowledged at the hearing, these executives are not responsible for the day-to-day operations of the company. Tr. 10/25/04 at 13 ("Well, I'm not suggesting they run the day-to-day operations of the company."). Counsel for McNeil–PPC explained that "decision making is sufficiently decentralized that the day-to-day operations, ... how much we are making today, that sort of thing, is done by each division, by the people who run each division." (Tr. 10/25/04 at 13.)

The fact that McNeil–PPC's board of directors and senior executives are located in New Jersey would support the defendant's position under the "nerve center

---

**6.** The fact that another 4% of the net sales of McNeil–PPC in 2003 was generated by Johnson & Johnson–Merck Consumer Pharmaceuticals Company, a joint venture of McNeil Consumer & Specialty Pharmaceuticals Division and Merck & Company, Inc. is not relevant to this Court's analysis since the joint venture is a separate legal entity.

**7.** Plaintiffs also point to certain prior unrelated litigation in which McNeil–PPC has allegedly admitted in pleadings that its principal place of business is Pennsylvania. However, the Third Circuit has instructed that the use of judicial admissions in unrelated litigation has no evidentiary value for purposes of determining a party's principal place of business because a party may not confer or defeat jurisdiction by mere pleading. *Mennen,* 147 F.3d at 293.

test," applied by some courts to determine the principal place of business when a corporation's activities are far-flung making the center of corporate activities analysis difficult. Under the nerve center test, a corporation's principal place of business is where "the locus of the board of directors' final decision-making authority" is located. *Mennen,* 147 F.3d at 291. This test, however, is not the controlling test in the Third Circuit. *Kelly,* 284 F.2d at 853–54.

Defendant McNeil–PPC also points to Judge Green's opinion in *Mears v. McNeil–PPC,* No. 95–3820, 1995 WL 581869, *2 (E.D.Pa.1995) where Judge Green found that McNeil–PPC's principal place of business was New Jersey. *Mears,* however, is distinguishable because even under the relatively undeveloped record in that case, it seems clear that McNeil–PPC's corporate organization and geographic focus has changed significantly since *Mears* was decided over eight years ago. In the end, McNeil–PPC's principal place of business is a question of fact, *see Shahmoon Indus., Inc. v. Imperato,* 338 F.2d 449, 451 (3d Cir.1964), that must be examined on a case-by-case basis. *High Ridge Park Assocs. v. Nycom Info. Services, Inc.,* 821 F.Supp. 835, 837 (D.Conn. 1993).

In view of the forgoing, this Court finds that McNeil–PPC has failed to satisfy its burden of showing that its day-to-day corporate activities and management decisions are either located in New Jersey or at least in a state other than Pennsylvania. Consequently, because the defendant has failed to show that the plaintiffs and the defendant are citizens of different states, there is no diversity of citizenship. Therefore, this case must be remanded to the Philadelphia Court of Common Pleas.

An appropriate Order follows.

*ORDER*

**AND NOW,** this **15th day** of **November** 2004, it is hereby **ORDERED** that:

1. Defendant's cross-motion for leave to amend notice of removal (doc. no. 5) is **GRANTED**.

2. Plaintiffs' motion to remand (doc. no. 4) and renewed motion to remand (doc. no. 25) are **GRANTED**.

3. The case is **REMANDED** to the Philadelphia Court of Common Pleas for the reasons provided in the accompanying memorandum.

**AND IT IS SO ORDERED.**