J-A16017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TOWAMENCIN SUMNEYTOWN PIKE, LLC AND WAWA, INC. | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| PHILADELPHIA SUBURBAN DEVELOPMENT CORPORATION | : : | No. 1976 EDA 2021 |
| Appellant | : | |

Appeal from the Judgment Entered September 7, 2021
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2018-20640

BEFORE:   McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED JULY 26, 2022**

Philadelphia Suburban Development Corporation (PSDC) appeals from the declaratory judgment entered in the Montgomery County Court of Common Pleas determining, *inter alia*, (1) property owned by PSDC is subject to a 40-foot easement benefiting property owned by Appellees Towamencin Sumneytown Pike, LLC (TSP) and Wawa, Inc. (Wawa), and (2) a redevelopment plan proposed by TSP and Wawa will not overburden a second 35-foot easement benefiting PSDC's property.  On appeal, PSDC argues the trial court erred by:  (1) failing to recognize Wawa was an indispensable party until after trial, and then refusing to dismiss the action or order a new trial; (2) failing to dismiss the action when the evidence demonstrated TSP did not

_____

[*] Retired Senior Judge assigned to the Superior Court.

have standing at all times; (3) determining that TSP proved that a 40-foot easement replaced an existing 25-foot easement and PSDC had constructive notice thereof; and (4) determining TSP's development plan did not overburden a 35-foot easement benefiting PSDC's property. For the reasons below, we affirm.

## I. FACTS & CHAIN OF TITLE

This dispute involves four properties in Towamencin Township, Montgomery County, Pennsylvania, which the trial court aptly describes as follows:

> [TSP] is the record owner of the property located at 1685 Sumneytown Pike in Towamencin Township ("TSP Property"). It is located at the northeast intersection of Forty Foot Road and Sumneytown Pike[, and] is approximately 1.3 acres in area.
>
> [Wawa] is the record owner of the property located at 1401 Forty Foot Road in Towamencin Township ("Wawa Property"). The Wawa Property is adjacent to and north of the TSP Property, but it extends to the east beyond the eastern border of the TSP Property. The Wawa Property is approximately 1.5 acres in area.
>
> PSDC is the record owner of two properties on Sumneytown Pike, referred to as the PSDC 1 Acre Property and the PSDC 5 Acre Property. The PSDC 1 Acre Property is approximately .93 acres in area, adjacent to and immediately east of the TSP Property. It extends to the east to the same extent as the eastern boundary of the Wawa Property. The PSDC 5 Acre Property is approximately 5.08 acres in area, adjacent to and immediately east of the PSDC 1 Acre Property and the Wawa Property.
>
> Thus, the Wawa Property shares a border with the TSP Property (south of the Wawa Property), the PSDC 1 Acre Property (south of the Wawa Property and east of the TSP Property), and the PSDC 5 Acre Property (east of the Wawa Property and east of the PSDC 1 Acre Property). . . .

Trial Ct. Op. 1/10/22, at 2-3 (record citations and footnotes omitted).

At issue herein are two easements. The first easement runs north/south beginning at Sumneytown Pike, through the PSDC 1 Acre Property, to benefit the Wawa Property. The second easement runs east/west beginning at Forty Foot Road, through the Wawa Property, to benefit one or both of the PSDC Properties.

In its opinion, the trial court provided a detailed review of the transactions involving the four properties, as well as the evolution of the two easements, which we summarize as follows. The easements originated in a subdivision plan prepared by Urwiler & Walter, Inc. (the Urwiler Plan) in January of 1974. Trial Ct. Op. at 3. At that time, Third Federal Savings & Loan Association of Philadelphia (Third Federal) owned both the Wawa Property and the PSDC 1 Acre Property. *Id.* The Urwiler Plan provided for the following two easements:

> [1]   an easement on the Wawa Property along its southern border, running east to west from the western border of the PSDC 5 Acre Property to Forty Foot Road, described as "35' Wide Permanent Easement for Lot #1 & 2 (Ingress & Egress)" (hereinafter referred to as "the 35-Foot Easement"); and
>
> [2]   a serpentine easement on the PSDC 1 Acre Property, beginning at Sumneytown Pike at roughly the middle of the southern border of the PSDC 1 Acre Property, heading north, then curving west, and then curving north again, ending at the southern border of the Wawa Property, close to but east of the western border of the PSDC 1 Acre Property, and described as "25' Wide Permanent Access Easement for Lot #1" (hereinafter referred to as "the 25-Foot-Easement").

*Id.* at 3-4 (record citations omitted). As the trial court notes, "[d]espite the statement in the Subdivision Plan that the 25-Foot-Easement was for the

benefit of 'Lot #1,' the apparent intent was that the 25-Foot Easement would benefit Lot 2 — i.e., the Wawa Property." *Id.* at 4.

On July 19, 1974, Third Federal conveyed the Wawa Property to P.C. Enterprises, Inc. (P.C.), but retained title to the PSDC 1 Acre Property. *See* Trial Ct. Op. at 4-5. The Wawa Property was described in the deed as "Lot No. 2 on the Urwiler Plan" and "expressly recognized" both the 25-Foot-Easement and the 35-Foot-Easement described above. *See id.* at 4. On September 28, 1976, P.C. conveyed the Wawa Property to Hatfield Township Industrial Development Authority (Hatfield IDA). *Id.* The legal description of the property and reference to the 25-Foot-Easement remained the same as the prior deed; however, there was no mention of the 35-Foot-Easement. *See id.*

The Slotter family acquired title to the TSP Property on October 24, 1979. Trial Ct. Op. at 3. "For most or all of the time that [they owned] the TSP Property . . ., it was used for the operation of a gas station, initially by the Slotters and later by Mobil Order Corporation ('Mobil Oil') under a lease from the Slotters." *Id.* at 5. The PSDC 5 Acre Property was conveyed to Towamencin Township (the Township) by two deeds dated August 21, 1972, and May 15, 1980. *Id.* Thereafter, on April 5, 1988, Third Federal conveyed the PSDC 1 Acre Property to the Township. *Id.* The deed "expressly recognized that Third Federal was conveying its rights under the 35-Foot Easement," and "was subject to the 25-Foot Easement[.]" *Id.* Thus, in 1989, the Wawa Property was owned by Hatfield IDA, the TSP Property was owned

by the Slotter family, and both the PSDC 1 Acre Property and 5 Acre Property were owned by the Township.

The facts relevant to the evolution of the 40-Foot Easement are as follows:

On or about July 22, 1988, Mobil Oil submitted to the Township (and subsequently recorded) a Site Improvement Plan ("Mobil Redevelopment Plan") to redevelop the TSP Property as an improved Mobil Oil gasoline station. The Mobil Redevelopment Plan shows a **26-foot-wide** driveway on the PSDC 1 Acre Property, parallel with and close to the border between the TSP Property and the PSDC 1 Acre Property, running north to south from the southern border of the Wawa Property to Sumneytown Pike. It has a notation that the developer (i.e., Mobil Oil) was responsible for building the driveway. The Township's Board of Supervisors ("the Township Board") approved the Mobil Redevelopment Plan by Resolution No. 89-18, dated April 13, 1989.

On November 13, 1989, the Township, as owner of the PSDC 1 Acre Property, and Charles T. McMurtrie ("McMurtrie") and Hatfield IDA, as equitable and legal owners, respectively, of the Wawa Property, executed two instruments that are central to the present dispute — a Grant of Easement and an Extinguishment of Easement. The Grant of Easement granted an easement on the Township's property (i.e., the PSDC 1 Acre Property) "for ingress and egress . . . by the general public" between Sumneytown Pike and the Wawa Property — specifically, "[a]n easement for ingress and egress, as hereinafter defined, extending over each of those certain strips of land more fully described as Exhibit 'A' attached hereto and designated on Grantor's plans." Exhibit A sets forth a metes-and-bounds legal description of the easement, showing that it is 40 feet wide and located along the western border of the PSDC 1 Acre Property, running north to south from the southern border of the Wawa Property to Sumneytown Pike ("the 40-Foot Easement").

Despite the reference to "Grantor's plans," no plan or drawing was attached to the Grant of Easement, and no plan as referred to in the instrument has been found. Nevertheless, the metes-and-bounds description in the Grant of Easement is

- 5 -

sufficient to determine the location and dimensions of the 40-Foot Easement. The metes-and-bounds description expressly states that the northern and southern borders of the easement are both "40.00 feet" in width. There is no persuasive evidence that the references to "40.00 feet" were mistaken and were intended to be 25 or 26 feet.

The Grant of Easement identifies the Township as the "Grantee" and McMurtrie and Hatfield IDA as the "Grantor." The parties agree that these identifications are mistaken and that the Township was intended to be the grantor, and McMurtrie and Hatfield IDA the grantee, of the easement. The parties further agree that this intent is clear from the document notwithstanding the parties' error.

The Grant of Easement was recorded . . . on December 21, 1989. In the alphabetical grantor-grantee index, the Grant of Easement was properly indexed against the parties to the instrument — the Township, McMurtrie, and Hatfield IDA. These parties were "cross-indexed" — i.e., they were indexed as both grantors and grantees. On the parcel index, however, the Grant of Easement was mistakenly indexed against the Wawa Property rather than the PSDC 1 Acre Property.

The Extinguishment of Easement provides that the previously granted 25-Foot Easement is extinguished. This extinguishment is recited in the Grant of Easement as part of the consideration for the 40-Foot Easement. The Extinguishment of Easement was recorded . . . on December 21, 1989, immediately after the recording of the Grant of Easement. Once again, the instrument was properly indexed against the parties in the alphabetical grantor-grantee index but was mistakenly indexed against the Wawa Property in the parcel index.

Following the Township's approval of the Mobil Redevelopment Plan, Mobil Oil made significant property improvements. These included the installation on the PSDC 1 Acre Property of a driveway from Sumneytown Pike to the southern border of the Wawa Property, within the metes and bounds described in the Grant of Easement. **The driveway is approximately 26 feet in width, varying slightly along the length of the driveway. The improvements also included the installation of curbing and curb cuts, lighting, and signage, occupying an additional approximately nine feet on the west side of the driveway toward the TSP Property,**

**within the area of the 40-Foot Easement**. Those improvements have substantially remained in place until the present.

Trial Ct. Op. at 5-8 (record citations and footnote omitted; emphases added).

On December 18, 1991, Develcor PA, Inc. obtained the deed to the Wawa Property following a sheriff's sale. *See* Trial Ct. Op. at 8. The deed referred to the 25-foot-wide easement as shown on the Urwiler Plan, using the same language that appeared in the prior deeds conveying the property from Third Federal to P.C. and from P.C. to Hatfield IDA. *Id.* "The Sheriff's Poll Deed [made] no reference to the 40-Foot Easement set forth in the Grant of Easement nor [did] it refer to the Extinguishment of Easement." *Id.* at 8-9. Subsequently, the Wawa Property was conveyed through four deeds between 1991 and 2006; the final deed, dated June 26, 2006, conveyed the property to its present owner, Wawa. *Id.* at 9. None of those deeds referred to the 40-Foot Easement or the Extinguishment of Easement; instead, they all contained the same language regarding the 25-Foot Easement. *Id.* Wawa has operated a convenience store onsite since the time it acquired the property. *Id.*

On June 21, 2004, the Township — which, at that time, owned both the PSDC 1 Acre and 5 Acre Properties — recorded a "Record Plan." Trial Ct. Op. at 9. "The Record Plan [did] not show either the serpentine 25-Foot Easement or the 40-Foot Easement[, but instead,] show[ed] a 'relocated existing 25 feet wide access easement' at or near the property line between the PSDC 1 Acre

Property and the TSP Property." *Id.* There was no evidence that the owners of either the TSP or Wawa Properties agreed to the Record Plan. *Id.*

PSDC obtained title to its two properties from the Township on May 10, 2006. Trial Ct. Op. at 10. The deed to the PSDC 1 Acre Property again referred only to a 25-foot driveway easement, and not to the prerecorded grant of the 40-Foot Easement or the extinguishment of the 25-Foot Easement. *Id.* Moreover, "PSDC obtained title insurance for its purchase of the two properties[, and t]he title search . . . **did not disclose**" either the Grant of the 40-Foot Easement or Extinguishment of the 25-Foot Easement. *Id.* (emphasis added).

As noted *supra*, the Slotter family operated a gas station on the TSP Property from 1979. However, by the time they conveyed the property to TSP (the present owner) on December 13, 2017, the gas station had ceased operation, and TSP demolished the building. Trial Ct. Op. at 8, 11. Prior to its acquisition of the deed to the TSP property,[1] TSP and Wawa entered into an Agreement of Sale on June 21, 2017, whereby TSP "agreed to purchase the Wawa Property and lease back to Wawa both the Wawa Property and the TSP property[,]" for the development of a new gas station (TSP Property) and expanded convenience store (Wawa Property). *Id.* at 11.

_____

[1] The trial court does not acknowledge that this agreement, and the subsequent development plan we will discuss *infra*, were submitted before TSP acquired the deed to the TSP Property in December of 2017.

Thereafter, during the summer of 2017, TSP submitted to the Township a "sketch plan of its proposed development" of the two properties, and later, a "formal application for approval" of its plan. Trial Ct. Op. at 11.

> During the review process, engineers from both the Township and the Pennsylvania Department of Transportation requested certain changes to the 35-Foot Easement, to which TSP agreed. The principal change was the installation of a "pork chop" — a concrete island in the center of the 35-Foot Easement where it meets Forty Foot Road, to require all vehicular traffic exiting onto Forty Foot Road to make a right (northbound) turn only. The concern was that southbound traffic on Forty Foot Road would back up from the traffic light at Sumneytown Pike past the 35-Foot Easement, so that it would be dangerous to make a left-turn exit onto Forty Foot Road from the 35-Foot Easement. The "pork chop" would not affect traffic entering the 35-Foot Easement; vehicles could enter from either direction on Forty Foot Road. The overall width of the driveway would be widened from 30 feet to 35 feet. As a result of installation of the "pork chop," however, the driveway where it meets Forty Foot Road would be reduced from a current total width of 30 feet to a divided driveway with an inbound width of 14.4 feet and an outbound (right-turn-only) width of 15.1 feet. The new widths are sufficient to permit ingress and egress by a tractor-trailer.
>
> TSP's plan also call[ed] for the installation of a pedestrian crosswalk across the 35-Foot Easement between the gas station area and the new Wawa store. The crosswalk would not physically impede the flow of traffic on the 35-Foot Easement, but traffic would be required to stop and yield to pedestrians in the crosswalk.
>
> TSP's plan also call[ed] for the widening of the paved driveway within the 35-Foot Easement. The driveway presently tapers to a narrower width as it approaches the PSDC 5 Acre Properly, and TSP would widen that portion of the driveway to make the driveway width more uniform. In its current state, the paved driveway within the 35-Foot Easement terminates approximately five or six feet before the property line of the PSDC 5 Acre Property, leaving a grassy area from the end of the driveway extending to the beginning of the pavement on the PSDC 5 Acre Property. The grassy area drops in elevation by several

- 9 -

feet from the Wawa Property to the PSDC 5 Acre Property. The TSP development plan [did] not call for any change in these conditions.

TSP's plan [did] not call for the modification of the driveway from Sumneytown Pike originally installed by Mobil Oil, except for some modification to the radii of the curb cuts to facilitate traffic flow. TSP's plan calls for the closing of certain existing access points to the TSP Property and the Wawa Property other than the above-discussed driveways from Forty Foot Road and Sumneytown Pike. The changes to be made under TSP's plan will result in an increase in vehicular traffic in the 35-Foot Easement[.] . . .

*Id.* at 11-12.

While TSP was still discussing its plan with the Township, PSDC submitted its own plan on February 28, 2018, relating to the development of the PSDC 1 Acre Property and 5 Acre Property, as well as other lands it owned in the vicinity. Trial Ct. Op. at 13. It followed with a proposed zoning ordinance amendment submitted in May of 2018. *Id.* "PSDC's development concept was inconsistent with TSP's plan" — specifically, it called for the relocation of the proposed Wawa store and gas station "further down on Sumneytown Pike, away from the" Forty Foot Road intersection, so that the land could be used for other purposes. *Id.* "The Township did not approve the zoning ordinance amendment proposed by PSDC." *Id.*

As noted *supra*, in June of 2017, TSP and Wawa had entered into an Agreement of Sale whereby TSP agreed to purchase the Wawa Property. The agreement was amended several times. Trial Ct. Op. at 13. However, on April 2, 2020, Wawa notified TSP "that it was terminating the Agreement of Sale and the Land Lease Agreement." *Id.* (citation omitted). Nevertheless,

on May 20, 2020, the Township Board approved TSP's final development plan with conditions not relevant to the issues *sub judice*. **See id.** at 13 & n.7. "Two days later, on May 22, 2020, Wawa and TSP entered into the 'Reinstatement of and Sixth Amendment to Agreement of Sale' and the 'Reinstatement of and Second Amendment to Land Lease Agreement,' which provided for the reinstatement of the [agreements] upon the terms previously agreed to." **Id.** at 13-14 (record citation omitted). Currently, both the PSDC 1 Acre Property and the PSDC 5 Acre Property are undeveloped. **Id.** at 14.

## II. PROCEDURAL HISTORY

On August 20, 2018, TSP filed a civil complaint against PSDC, "seeking an order to quiet title and/or a declaratory judgment to determine the parties' respective rights under the above-described easements." Trial Ct. Op. at 15; **see** TSP's Complaint, 8/20/18, at 10-13.

The trial court summarized the claims raised and ensuing procedural history as follows:

> TSP sought a declaratory judgment on three issues:
>
> • whether the easement on the PSDC 1 Acre Property currently in effect is the 40-Foot Easement, the 25-Foot Easement, or a relocated easement at or near the border with the TSP Property of 25 or 26 feet in width;
>
> • whether TSP's development plan would violate PSDC's rights under the 35-Foot Easement, by interfering with ingress or egress, overburdening the easement, or otherwise;
>
> • whether the 35-Foot Easement may be used for access to, or otherwise for the benefit of, the PSDC 5 Acre Property as well as the PSDC 1 Acre Property.

At a pretrial conference held on December 10, 2020, before the Honorable Steven C. Tolliver, Sr., trial was set to commence before [the Honorable Jeffrey S. Saltz] on January 28, 2021. At the conference, counsel for PSDC raised the issue whether Wawa was an indispensable party, and Judge Tolliver entered an Order setting an expedited schedule for the filing and briefing of a motion on this issue. On December 14, 2020, PSDC filed a Motion for Dismissal for Failure to Join an Indispensable Party, requesting that the action be dismissed for failure to join Wawa. TSP filed its Response[, and o]n December 21, 2020, Judge Tolliver entered an Order denying the Motion.

[The case proceeded to a n]onjury trial . . . by video conference before [Judge Saltz] on January 28 and 29 and February 12, 2021. [The parties were permitted to submit post-trial briefs and, in its brief,] PSDC renewed the argument that the case should be dismissed for failure to join Wawa as an indispensable party. TSP opposed this argument and also asserted that Judge Tolliver's prior resolution of the issue was binding.

The [trial c]ourt's Decision was rendered on March 25, 2021. It ruled on TSP's claims as follows:

• The Court declared that the PSDC 1 Acre Property was **subject to the 40-Foot Easement** and that such easement remains valid and enforceable and may be used by TSP and the general public for ingress and egress between Sumneytown Pike and the TSP Property and the Wawa Property.

• The Court declared that TSP's proposed redevelopment of the TSP Property and the Wawa Property **does not overburden** or otherwise violate the rights of PSDC under the **35-Foot Easement**.

• The Court declined to make a declaration on the issue whether the 35-Foot Easement may be used by PSDC for access to, or otherwise for the benefit of, the PSDC 5 Acre Property and held that TSP's claim for such a declaration would be dismissed without prejudice.

The Decision also rejected PSDC's renewed argument that Wawa was an indispensable party, and it added the following comment:

- 12 -

The Court recognizes the Order of the Honorable Steven C. Tolliver, Sr., dated December 21, 2020, holding that Wawa is not an indispensable party, and sees no reason to depart from it. It should be noted, however, that "[t]he coordinate jurisdiction rule is not applicable to the issue of subject matter jurisdiction[.]"

On April 1, 2021, PSDC filed a Motion for Post-Trial Relief, and on April 8, 2021, TSP filed a Cross Motion. In addition to challenging the declaratory relief granted by the Decision, PSDC's Motion also asserted that the Court had erred in holding that Wawa was not an indispensable party. After briefing and oral argument, the Court was persuaded that under applicable case law, Wawa was indeed an indispensable party and that [it] had erred in holding otherwise. The Court therefore entered an Order on June 30, 2021, that (a) modified the Conclusions of Law in its Decision to hold that Wawa was an indispensable party or, at a minimum, a party to be joined if possible; (b) joined Wawa as a party plaintiff; (c) directed Wawa to file a response "stating its position on how this matter should proceed in light of Wawa's joinder, including whether a new trial is necessary or appropriate and whether Wawa desires to present any evidence beyond that presented at the prior trial (and if so, a summary of such evidence)"; and (d) permitted any other party to file a response on the same issues. The Order provided that in all other respects, the Motions for Post-Trial Relief were taken under advisement.

On July 27, 2021, Wawa filed its response to the Court's Order, stating:

Wawa has been kept fully apprised of all developments in this case and believes that its interests have been adequately represented. Wawa does not believe that a new trial is necessary or appropriate in light of Wawa's joinder and does not desire to present any evidence beyond that presented at the prior trial.

On August 9, 2021, PSDC filed its own response. It argued that the action should be dismissed without prejudice or, in the alternative, a new trial should be ordered. The Court held an on-the-record conference with counsel on September 1, 2021. On September 3, 2021, the Court entered an Order denying all post-trial relief other than the joinder of Wawa as previously ordered on June 30, 2021, and entering a declaratory judgment in

accordance with its Decision.  The Order explained that "no further proceedings are required as a result of the joinder of Wawa[.]"

Trial Ct. Op. at 15-18 (citation and footnotes omitted).

On September 7, 2021, upon praecipe of TSP, the trial court entered a declaratory judgment in accordance with its aforementioned decision. Thereafter, PSDC filed a timely notice of appeal, and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[2]

## III.  ISSUES RAISED

PSDC raises the following issues for our review:

1.  Did the trial court err in failing to recognize a property owner as an indispensable party until after a decision had been rendered thereby depriving [PSDC] of the opportunity to litigate its case against Wawa[?]

2.  Did the trial court err in failing to dismiss the matter after evidence demonstrated that [TSP] did not have standing at all relevant times?

3.   Did the trial court err in concluding that [TSP] satisfied its burden of evidence that the Grant of Easement and Extinguishment of Easement effectively replaced the existing 25 foot easement with a 40 foot easement benefiting the Wawa [P]roperty?

   a.  Did the trial court err in concluding that the record provided constructive notice of the purported encumbrance of a 40 foot easement on the PSDC 1 acre parcel?

---

[2] TSP did not file a cross-appeal, and, thus, has not challenged the trial court's dismissal of its claim seeking a declaration that 35-Foot Easement may not be used to benefit the PSDC 5 Acre Property.  Accordingly, we do not address that issue on appeal.

- 14 -

> b. Did the trial court err in finding that the Grant of Easement and Extinguishment of Easement unambiguously granted a 40 foot easement in favor of the Wawa parcel?
>
> 4. Did the trial court err in concluding that [TSP's] development plan did not overburden the 35 foot easement or otherwise interfere with the rights of the dominant estate?

PSDC's Brief at 4-5.

## IV. STANDARD OF REVIEW

When reviewing the decision of a trial court following a nonjury trial in a declaratory judgment action,

> we give great deference to the factual findings of the trial court. We must determine whether the trial court's verdict is supported by competent evidence in the record and is free from legal error. For discretionary questions, we review for an abuse of that discretion. For pure questions of law, our review is *de novo*.

***Tri-State Auto Auction, Inc. v. Gleba, Inc.***, 257 A.3d 172, 184 (Pa. Super. 2021) (citation omitted). "Whether a court has subject matter jurisdiction presents a question of law, making our standard of review *de novo* and the scope of review plenary." ***Orman v. Mortgage I.T.***, 118 A.3d 403, 406 (Pa. Super. 2015) (citation omitted). Moreover, because in a nonjury trial the court sits as factfinder,

> the weight to be assigned the testimony of the witnesses is within its exclusive province as are credibility determinations. Further, the court is free to choose to believe all, part, or none of the evidence presented.

***Stokes v. Gary Barbera Enterprises, Inc.***, 783 A.2d 296, 297 (Pa. Super. 2001) (citations omitted).

We note that: "The law is jealous of a claim to an easement, and the burden is on the party asserting such a claim to prove it clearly." **Becker v. Rittenhouse**, 147 A. 51, 53 (Pa. 1929) (citation omitted). We interpret the language of an easement under general contract law. **See PARC Holdings, Inc. v. Killian**, 785 A.2d 106, 112 (Pa. Super. 2001).

> Whether a trial court properly interpreted a contract is a question of law and our scope of review is plenary. As with any contract the rights conferred by the grant of an express easement must be ascertained solely from the language of the deed, provided that the deed language is unambiguous. When the language is ambiguous, however, a court may resort to evidence of extrinsic circumstances as an aid to interpretation. When the purposes of an express easement are not specifically stated, the court must ascertain the objectively manifested intention of the parties in light of the circumstances in existence at the time of conveyance. Whether an ambiguity exists is a question of law subject to plenary review. However, resolution of conflicting parol evidence relevant to what the parties intended by an ambiguous provision is for the trier of fact.

**Id.** (internal citations and quotation marks omitted).

Furthermore:

> Our law provides that [i]t is always the duty of a purchaser of real estate to investigate the title of his vendor[,] and the purchaser must exercise due diligence in this regard. The Supreme Court of Pennsylvania has explained the due diligence obligation as follows:

> > [Purchasers'] title could be affected only with what they actually or constructively knew at the time of the purchase; necessarily, as to the latter, by what they could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect the [title], and also by what appeared in the appropriate indexes in the office of the recorder of deeds, and in the various courts of record whose territorial jurisdiction embraced the land in dispute; but not of that

> which they could not have learned by inquiry of those only whom they had reason to believe knew of the facts.

> Accordingly, a purchaser fulfills his or her due diligence requirement when he or she examines the documents recorded in the county or counties in which the property is situated and when he or she asks the possessor about title, as well as any other people the purchaser has reason to believe would know about the status of the property's title.

***Nolt v. TS Calkins & Assocs., LP***, 96 A.3d 1042, 1048 (Pa. Super. 2014) (internal citations, quotation marks, and footnote omitted).

## V. JOINDER OF WAWA AS INDISPENSIBLE PARTY AFTER TRIAL

In its first claim, PSDC argues the trial court erred by declining to dismiss the action when TSP failed to join an indispensable party, Wawa, but rather directed Wawa be joined in the action **after** trial.[3] *See* PSDC's Brief at 33. PSDC emphasizes that the failure to join an indispensable party is a jurisdictional question which may be raised at any time, and this Court has vacated judgments on appeal when a party failed to join an indispensable party in the trial court. *See id.* at 35-39, *citing **Orman**, **supra**, and **Barren v. Dubas***, 441 A.2d 1315 (Pa. Super. 1982). It insists that the trial court's decision to "[s]imply allow[ ] the case to move forward and permit[ ] Wawa

---

[3] PSDC's characterization that the court recognized Wawa as an indispensable party "after the entry of judgment" is incorrect. PSDC's Brief at 33. After trial, and upon review of PSDC's post-trial motions, the court "modified" its March 25, 2021, **decision**, and joined Wawa as a party to the action. *See* Order, 6/30/21, at 1. The court did so at a time when it still had jurisdiction of the action, **before** judgment was entered. It was not until **after** Wawa informed the court that it did not desire to present any evidence, and PSDC filed a response expressing its position that either the action should be dismissed or a new trial should be conducted, that the court then entered judgment on the ruling. *See* Judgment, 9/7/21.

to retroactively consent to be bound by the judgment entered in its favor deprives PSDC of all the rights and remedies that are standard to any litigant in the context of a lawsuit." *Id.* at 41. PSDC maintains that it "should have the right to pursue . . . claims against Wawa" and its inability to do so because of the belated joinder "forces" PSDC to waive its rights. *Id.* at 42-43. It asserts:

> TSP has not yet purchased the Wawa property and such a time may never come. Any decision on this matter will directly affect the Wawa parcel by adjudicating its access rights vis-à-vis the PSDC owned properties. Moreover, the failure to dismiss the action at the outset deprived PSDC of the opportunity to litigate its case against Wawa resulting in a denial of due process.

*Id.* at 43-44. Indeed, PSDC insists the trial court "lacked subject matter jurisdiction and the purported judgment entered was null and void at its entry." *Id.* at 41.

"Under Pennsylvania law, the failure to join an indispensable party implicates the trial court's subject matter jurisdiction." *Orman*, 118 A.3d at 406 (citation omitted). Pennsylvania Rule of Civil Procedure 1032(b) provides that,

> [w]henever it appears . . . that the court lacks jurisdiction of the subject matter **or that there has been a failure to join an indispensable party**, the court shall order that the action be transferred to a court of the Commonwealth which has jurisdiction **or that the indispensable party be joined, but if that is not possible, then it shall dismiss the action**.

Pa.R.C.P. 1032(b) (emphasis added).

In refusing to dismiss the action, the trial court explained that it was relying on the "clear" language of Rule 1032(b), which states "the preferred

- 18 -

remedy for the failure to join an indispensable party is to order joinder of such party; only 'if that is not possible' should the action be dismissed." Trial Ct. Op. at 31-32. Thus, the court directed that Wawa be joined as a party, rather than dismissing the entire action. *See id.* at 32. The court further opined:

> The more difficult question was how to proceed once Wawa had been joined. PSDC contended that the Court should reopen discovery to permit discovery of Wawa and then hold a new trial. The Court saw no need to do so. The factual and legal issues underlying TSP's claims for declaratory relief were identical both before and after Wawa's joinder; the joinder of Wawa did not introduce any new issues that had not previously been relevant. All defenses that PSDC could have asserted against Wawa, if it had been a party at trial, could also have been asserted against TSP, which, as equitable owner, was standing in Wawa's shoes. [*See O'Neill v. Philadelphia Zoning Bd. of Adjustment*, 120 A.2d 901, 905 (Pa. 1956) ("[A]n equitable owner under a conditional contract to purchase stands in the same position as a legal owner in seeking a variance for the same purpose.").]
>
> Further, PSDC had a full opportunity to take discovery on those issues the first time around. Although Wawa was not a party at that point, PSDC had an array of tools available to obtain discovery from Wawa as a nonparty. *See* Pa.[R.C.P.] 234.1 (subpoena to attend and testify and to produce documents at deposition), 4001(c), (d) (deposition upon oral examination or written interrogatories), 4404 (deposition by written interrogatories), 4007.1 (deposition by oral examination), 4009.21 (subpoena for production of documents and things).[*] PSDC cannot identify any discovery that it desired to seek from Wawa that it could not have obtained during the pretrial discovery period. Just as important, PSDC cannot identify any evidence that it would introduce at a new trial that it could not have offered at the trial that has already been held. As a result, the late joinder of Wawa did not cause any undue prejudice to PSDC or deprive it of the ability to be fully heard at the prior trial.
> _____
>
> * It appears that the only discovery not available against Wawa, as a nonparty, was a request for admission, which can be directed only to a party. *See* Pa.[R.C.P.] 4014. PSDC cannot identify any

> prejudice that it incurred by reason of an inability to use this form of discovery, especially when any information sought by a request for admission could have been obtained by another discovery method, such as a subpoena for deposition of a corporate representative.
>
> _____
>
> Under the circumstances, the reopening of discovery and the holding of a new trial would have been a needless ritual with no meaningful benefit and no expectation of a different result. *See Lukus v. Westinghouse Elec. Corp.*, 419 A.2d 431, 454 (Pa. Super. 1980) (court need not require "useless procedural formality"). The only purpose to be served by such proceedings would be additional expense and delay. The Court therefore denied any further post-trial relief to PSDC and entered a declaratory judgment for TSP and Wawa in accordance with its prior Decision.
>
> The Court acknowledges that its resolution of this issue was not ideal. Because of the belated joinder of Wawa, Wawa had the luxury of remaining outside the litigation and agreeing to be bound by the result only after its prospective purchaser, TSP, had prevailed at trial (on two of its three claims). But as Justice Frankfurter famously observed, "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Nat. Bank & Tr. Co.*, 335 U.S. 595, 600 (1949) (dissenting opinion). Faced with a situation that had no perfect solution, the Court chose the course that most served the interest of justice and that resulted in no prejudice to PSDC. "The fact that a court of equity cannot achieve perfect justice does not mean it should forsake pursuit of substantial justice." *Nat'l Treasury Emps. Union v. Nixon*, 521 F.2d 317, 322 (D.C. Cir. 1975).

*Id.* at 32-34 (emphasis omitted).

Upon our review, we detect no error in the court's ruling. Moreover, the cases upon which PSDC relies are readily distinguishable.

First, we note that *Barren* was decided in 1982, before the Legislature amended Rule 1032, effective September 1, 1994. *See* Pa.C.R.P. 1032, Credits. Prior to the amendment, "Rule 1032(2) . . . provided for the dismissal

of an action if . . . an indispensable party had not been joined." Pa.R.C.P. 1032, Explanatory Cmt. – 1994. However, the amended language states that an indispensable party should be joined if possible, but if the party cannot be joined, "only then dismissal of the action will be appropriate." *Id.* Thus, at the time *Barren* was decided, the only remedy for the failure to join an indispensable party was dismissal of the action.

Moreover, both *Barren* and *Orman* are procedurally distinguishable from the case *sub judice*. In *Barren*, the appellees filed an equity action seeking recognition of their "prescriptive easement to an alleyway traversing [the] appellants' adjoining parcel of land[,]" and injunctive relief prohibiting the appellants from interfering with the easement. *Barren*, 441 A.2d at 1315-16. The court entered a *decree nisi*, granting the appellees their requested relief. *Id.* at 1316. However, the appellants filed exceptions alleging that, prior to the initiation of the proceedings, they "conveyed a portion of the servient tenement to" the Gillotts. *Id.* "The [trial] court ruled that the Gillotts were indispensable parties to these proceedings, modified the *decree nisi*, and affirmed it as modified." *Id.* In a footnote, the Superior Court panel noted that although the trial court directed that the Gillotts be joined as additional defendants, "the record indicate[d] that the joinder ha[d] not yet been made, and the Gillotts [had] **not yet been heard** concerning the existence of the easement." *Id.* at 1316, n.* (emphasis added).

In the present case, unlike in *Barren*, the court's decision benefitted Wawa (the indispensable party). More importantly, the trial court required

- 21 -

TSP to serve Wawa with its order joining Wawa as a party plaintiff, and directed Wawa to "stat[e] its position on how [the] matter should proceed . . . including whether a new trial was necessary or appropriate and whether Wawa desire[d] to present any" additional evidence. Order, 6/30/21, at 2. Further, the court also provided the other parties the opportunity to file their "own response" to the court's order. *Id.* at 2. Thus, the trial court considered the arguments of **both** Wawa and PSDC before determining that joinder was appropriate without any additional proceedings.

*Orman* was decided under the amended language of Rule 1032(b). In that case, the plaintiff wife filed an action seeking to quiet title and reform her residential mortgage. *See Orman*, 118 A.3d at 404-05. The mortgage holder (Bank) subsequently filed a motion for summary judgment, which the court granted. *Id.* at 405. The trial court also determined the wife failed to join an indispensable party, her husband, who also signed the mortgage at issue. *Id.* at 405, 407. On appeal, the wife challenged, *inter alia*, the court's determination that her husband was an indispensable party. *See id.* at 406.

A panel of this Court vacated the judgment entered in favor of Bank and remanded with instructions that the action be dismissed. *See Orman*, 118 A.3d at 408. Although the panel concluded the trial court "correctly determined" that the husband was an indispensable party to the action, it further determined "[t]he proper remedy was always to dismiss [the complaint] without prejudice, rather than enter any form of judgment." *Id.* at 407-08.

We note, however, that the *Orman* Court did **not** consider whether the trial court could have directed that husband be joined as a plaintiff **before** judgment was entered. Indeed, the procedural posture on appeal was that a judgment had been entered, absent the inclusion of an indispensable party. Thus, the only proper remedy was to vacate the judgment and order the action be dismissed without prejudice. As noted above, here, the indispensable party was joined in the action before the entry of judgment. Accordingly, we conclude neither *Barren* nor *Orman* is controlling under the particular facts and procedural posture of the case before us.

The trial court's imperfect solution — directing that Wawa be joined as a party plaintiff after trial and permitting all parties to address how the matter should proceed — was proper under Rule 1032. PSDC's actual complaint is that the court did not accept its position that either dismissal of the action or a new trial was required. As previously stated, Rule 1032 provides that joinder of the indispensable party is the default remedy, and that dismissal is appropriate **only** if the party cannot be joined. *See* Pa.R.C.P. 1032, Explanatory Cmt. – 1994. We agree dismissal of the action was unnecessary in the present case.

With regard to PSDC's claim that the court should have ordered a new trial, we emphasize that when it first raised TSP's failure to join an indispensable party in December 2020, PSDC did not request that Wawa be joined as a party — rather, it requested **only** dismissal of the action. *See* PSDC's Motion for Dismissal for Failure to Join an Indispensable Party,

12/14/20, at 5 (unpaginated). Later, in its response to the court's June 30, 2021, order, PSDC again argued that dismissal of the action was appropriate, but alternatively stated its "position that if the matter is not dismissed, . . . a new trial [and] an opportunity to conduct pleadings and discovery . . . is necessary and appropriate." Response of PSDC to Wawa's Statement, 8/9/21, at 5. However, as noted above, the trial court concluded that the factual and legal issues underlying TSP's claims "were identical both before and after Wawa's joinder[,] the joinder . . . did not introduce any new issues that had not previously been relevant[, and a]ll defenses that PSDC could have asserted against Wawa . . . could also have been asserted against TSP, which, as equitable owner, was standing in Wawa's shoes." Trial Ct. Op. at 32 (citation omitted). PSDC does not provide this Court with any basis to disagree.

In terms of specific arguments, PSDC offers the following in its brief: (1) it "should have had the opportunity to raise an abandonment argument" against Wawa; (2) it had no opportunity to "pursue a counterclaim for quiet title relating to the respective easements or adverse possession" since TSP was only the equitable owner of the Wawa Property; and (3) it was denied the opportunity to pursue the "much more defined and expansive discovery" available only to parties. *See* PSDC's Brief at 42-43. PSDC's claims are undeveloped at best. It fails to explain how Wawa abandoned its rights with respect to the easements at issue, or why it would be entitled to the property through a quiet title or adverse possession claim. Further, as the trial court

points out, "PSDC had an array of tools available to obtain discovery from Wawa as a nonparty." **See** Trial Ct. Op. at 32 (citations omitted). It fails to demonstrate that it was precluded from obtaining relevant discovery as a result of Wawa's status prior to trial. Thus, we agree with the trial court that no relief is due on PSDC's first claim.

## VI. TSP'S STANDING

In a related argument, PSDC contends that TSP "lost its status as equitable owner" when Wawa terminated the Agreement of Sale of the Wawa Property on April 2, 2020. PSDC's Brief at 45. Further, it maintains that TSP attempted to "conceal the substance of the agreements" by failing to provide "required unredacted portions" of the documents. **Id.** PSDC asserts that "any interest" TSP had in the "pending controversy was immediately and irreparably severed" as of that date. **Id.** Accordingly, it insists:

> The court should have dismissed the matter upon finding that TSP lacked standing to pursue litigation as to a parcel in which it had no interest. The subsequent Reinstatement of the Agreement of Sale should be rendered immaterial for want of standing and failure to notify the court.

**Id.** at 46.

It is axiomatic that a party must have standing to maintain an action. **Rock v. Pyle**, 720 A.2d 137, 142 (Pa. Super. 1998). "The traditional concept of standing focuses on the idea that a person who is not adversely impacted by the matter he seeks to challenge does not have standing to proceed with the court system's dispute resolution process*." Pittsburgh Palisades Park,*

*LLC v. Com.*, 888 A.2d 655, 659 (Pa. 2005) (citation omitted). In order to demonstrate standing, a litigant must establish

> that he has a substantial, direct, and immediate interest in the outcome of the litigation[.] An interest is "substantial" if it is an interest in the resolution of the challenge which surpasses the common interest of all citizens in procuring obedience to the law. Likewise, a "direct" interest mandates a showing that the matter complained of caused harm to the party's interest, *i.e.*, a causal connection between the harm and the violation of law. Finally, an interest is "immediate" if the causal connection is not remote or speculative.

*Id.* at 660 (citations and some quotation marks omitted).

PSDC does not dispute that TSP — as equitable owner of the Wawa Property — had standing to **initiate** this declaratory judgment action. Rather, it insists TSP lost its standing when Wawa terminated the Agreement of Sale in April of 2020, and that the subsequent reinstatement of the Agreement in May of 2020 was of no consequence. *See* PSDC's Brief at 45. The trial court determined, however, that "the brief lapse in the effectiveness of the Agreement of Sale" did not deprive TSP of standing in this action. *See* Trial Ct. Op. at 30. We agree.

As the trial court aptly explained, TSP was "the beneficial owner" of the Wawa Property when the action was initiated, at the time of trial, and "at all phases of the case since then." Trial Ct. Op. at 30. The court concluded that the fact that TSP's "status as beneficial owner lapsed for a period of 50 days" — during which "no critical proceedings in this case occurred" — did not deprive TSP of standing. *Id.* PSDC provides us with no basis to disagree. Its reliance on purported discovery violations is waived, as it does not appear that

- 26 -

such claims were raised in the trial court. ***See*** Pa.R.A.P. 302(a). Further, as noted above, the Agreement of Sale was reinstated a mere 50 days after it was terminated, and was effective when the trial court entered its decision and judgment. Thus, PSDC's second claim fails.

## VII. GRANT OF 40-FOOT EASEMENT

Next, PSDC argues the trial court erred in determining that the PSDC 1 Acre Property was subject to the 40-Foot Easement, conveyed in the Grant of Easement, as opposed to the 25-Foot Easement described in its deed. ***See*** PSDC's Brief at 46. PSDC emphasizes that the grant of the 40-Foot Easement does not appear in any of the deeds in the chain of title of either the PSDC 1 Acre Property or the Wawa Property. ***See id.*** at 55-56. Rather, it asserts that when it obtained the PSDC 1 Acre Property from the Township in 2006, the deed referenced the Township's June 2004 "Record Plan," which referred to a "relocated 25 feet wide easement."[4] ***Id.*** at 55.

Furthermore, PSDC insists the Grant of Easement is "facially defective" — it improperly transposed the parties, listing the Township (owner of the servient estate) as the grantee and Wawa (owner of the dominant estate) as

_____

[4] As explained above, the original 25-Foot Easement was a "serpentine easement" which began "at roughly the middle of the southern border of the PSDC 1 Acre Property[.]" Trial Ct. Op. at 3. Subsequent development plans relocated the easement to border the TSP and the PSDC 1 Acre Properties. ***See id.*** at 5 (1988 Mobil Redevelopment Plan "shows a 26-foot-wide driveway on the PSDC 1 Acre Property, parallel with and close to the border between the TSP Property and the PSDC 1 Acre Property"); 9 (2004 Township Plan "shows a 'relocated existing 25 feet wide access easement' at or near the property line between the PSDC 1 Acre Property and the TSP Property").

the grantor. PSDC's Brief at 56. Thus, when the document was recorded, it was "indexed against the Wawa parcel, the dominant tenement by parcel identification number, and not against the PSDC 1 [A]cre parcel as required." *Id.* Accordingly, PSDC maintains it had no actual or constructive notice of the expanded easement since the Grant of Easement "fail[ed] to attach in any way to the PSDC 1 [A]cre parcel." *Id.* at 57.

PSDC also argues the Grant of Easement is ambiguous because it "contains a legal description without a plot or plan depicting the alleged new easement or reference thereto." PSDC's Brief at 63. Moreover, the Extinguishment of Easement, which was recorded immediately after the Grant of Easement, "references only" the Hatfield IDA deed, and purports to "destroy all rights of the Hatfield [IDA] to easements over Township property[.]" *Id.* at 63-64. Thus, PSDC asserts this language "yields any attempt to surmise the intent of the parties as mere speculation." *Id.* at 64. Consequently, it insists that it cannot be "charged with notice of the purported grant" of the easement when:

> 1. the chain of title for both parcels discredits the grant; 2. the burdened parcel is inaccurate; 3. the subject parcel is absent; 4. the parties are transposed; 5. the grantor affirmed title with a 25 feet wide easement; 6. the grantor did not recognize the existence of a 40 foot easement; and 7. the parcel that would benefit from a 40 foot easement did not recognize anything other than right of access through a 25 feet wide easement.

*Id.* at 59-60.

Despite the drafting and indexing errors described above, the trial court determined the grant of the 40-Foot Easement was effective, and that PSDC had constructive notice thereof. We agree.

First, the court found the fact that subsequent deeds did not refer to the 40-Foot Easement — but instead "continued to recite that the property was subject to the prior 25-Foot Easement" — was of no moment since "[s]uch recitals . . . cannot overcome the actual state of record title to the PSDC 1 Acre Property as affected by the Grant of Easement." Trial Ct. Op. at 26. Consistent with the testimony of PSDC's expert on title searches, Charles Proctor, the trial court opined the most likely explanation for the omission of the 40-Foot Easement in the later deeds is that the scriveners "simply carried over the property description[s] from" prior deeds, including errors in those descriptions. *See id.*; N.T., 2/12/21, at 8-9.

PSDC's attempt to analogize the obvious scrivener error in the case *sub judice* to those cases in which a party was misidentified by name is ineffective. *See* PSDC's Brief at 52-54, *citing **Prouty v. Marshall***, 74 A. 570 (Pa. 1909); ***Russek v. Shapiro***, 84 A.2d 514 (Pa. Super. 1951). In ***Prouty*** and ***Russek***, the properties at issue were burdened by a mortgage and judgment note, respectively. *See **Prouty***, 74 A. at 571; ***Russek***, 84 A.2d at 515. However, the recorded encumbrances in each case misidentified the name of the landowner. *See **Prouty***, 74 A. at 571 (recorded mortgage indexed against "S. J. Marshall," as opposed to "L. J. Marshall"); ***Russek***, 84 A.2d at 515 (judgment indexed against "Albert Wagner" and others, rather than "Abraham

Wagner"). Thus, the appellate courts determined the subsequent landowners were not burdened by the encumbrances because they did not have actual or constructive notice of the recordings. *See Prouty*, 74 A. at 574-76; *Russek*, 84 A.2d at 515-16. Here, as discussed *infra*, the trial court found PSDC had **constructive notice** of the 40-Foot Easement because the Grant of Easement was properly indexed in the alphabetical grantor-grantee index. *See* Trial Ct. Op. at 23.

Sections 356 to 358 of Pennsylvania's recording statute set forth the recording requirements to bind a subsequent purchaser of a property to an agreement entered into by a prior owner. *See* 21 P.S. §§ 356-358. First, Section 356 of requires that "[a]ll agreements in writing relating to real property situate in this Commonwealth" must be recorded in the county in which the property is located. 21 P.S. § 356. Next, Section 357 provides that "[t]he legal effect of the recording of such agreements shall be to give **constructive notice** to subsequent purchasers" of the fact of the agreements, as well as the fact that their rights will be limited by such agreements as if they had, themselves, executed the agreements. 21 P.S. § 357 (emphasis added). Lastly, Section 358 delineates the conditions necessary to impose constructive notice on a subsequent purchaser:

> In order for a document presented for record to the office of a recorder of deeds of a county to be constructive notice for the purpose of this act . . . the document shall be recorded, and **one of the following conditions** shall be satisfied:
>
> (1) In counties where . . . the "Uniform Parcel Identifier Law[ ]" applies, the uniform parcel identifier is endorsed or included on

the document, and it is indexed properly in an index arranged by uniform parcel identifiers.

(2) The document is indexed properly as to the party in all alphabetical indices. . . . For purposes of this section, the term **"document"** means a document that is eligible to be recorded in the office of the recorder of deeds, including, but not limited to, deeds, mortgages, quitclaim deeds, memoranda of lease and **easements**, and includes documents presented for record in person, by mail, electronically or in any other manner.

21 P.S. § 358 (emphases added).

In the present case, it is undisputed that the Grant of Easement was "mistakenly indexed against the Wawa Property rather than the PSDC 1 Acre Property" in the parcel index. *See* Trial Ct. Op. at 7; 21 P.S. § 358(1). Nevertheless, the trial court found PSDC had constructive notice of the Grant of Easement because the document was "indexed against all parties in the alphabetical grantor-grantee index" and that indexing "was sufficient to trigger constructive notice under [S]ections 357 and 358." Trial Ct. Op. at 24. We agree.

As the trial court points out, Section 358 requires that only **one of the two** listed conditions be met in order to find a subsequent purchaser had constructive notice of an agreement. *See id.*; 21 P.S. § 358. Because the Grant of Easement was cross-indexed against the Township — the owner of the PSDC 1 Acre Property — in the alphabetical index, the court determined PSDC had constructive notice of the Grant of Easement. *See* Trial Ct. Op. at 24.

In response to the court's finding, PSDC emphasizes "it is unknown conclusively whether the [Grant of Easement] was cross[-]indexed against

both parties prior to 2019[, and] the enactment of Section 358 post-dates the purchase of the properties by PSDC." PSDC's Brief at 58. We consider these claims in reverse order. While we recognize Section 358 was enacted in July of 2006 — shortly **after** PSDC acquired the PSDC 1 Acre Property in May of 2006 — PSDC provided no evidence or argument in the trial court (or on appeal) that the addition of Section 358 represented a substantive change in the manner in which title searchers research properties, *i.e.*, that a competent title searcher would not have searched both the alphabetical grantor-grantee index and the parcel index prior to July of 2006. Conversely, TSP's expert on title searches — Robert Lint, Jr. — confirmed that "a title searcher [is] required to search both the alphabetical and partial number indices" and that when PSDC purchased the PSDC 1 Acre Property in 2006, it would have been required to conduct a search "under the name of the [T]ownship[.]" N.T., 1/29/21, at 45, 51. He also opined that if PSDC had done so, it would have found the Grant of Easement. *Id.* at 53. PSDC's expert, Proctor, did not dispute this testimony, or offer any opinion regarding the alphabetical index.

Rather, PSDC's argument at the trial level focused on the whether the Grant of Easement was properly cross-indexed at the time PSDC purchased the property in 2006, when there was evidence the Recorder of Deeds Office corrected "countless errors" in the indexes subsequent to that date. *See* PSDC's Motion for Post-Trial Relief, 4/1/21, at 7-8; N.T., 1/29/21, at 60-62. The factual basis for this claim is summarized by the trial court as follows:

Mr. Lint testified from his review of the computerized records of the Recorder of Deeds that the Grant of Easement was properly indexed in the grantor-grantee index and that a proper title search for the PSDC 1 Acre Property should therefore have revealed the Grant of Easement. In connection with the "snapshot" from the Recorder's office that showed the indexing of the instrument, Mr. Lint was asked to explain the significance of the checkmark in the column headed "Verified." Mr. Lint testified:

> A few years ago the county had a subcontractor come in and redo the computer system. And when they did and it was finished, they found a bunch of errors, so the county set about having their own employees go through and sort of painstakingly verify all of the information that the subcontractor had entered into the system. And so when the county employee verified the information, a check mark showed up to let them know that somebody took a look at it and it was okay. [N.T., 1/29/21, at 49.]

On cross-examination, counsel for PSDC suggested that because of the error-correcting process that Mr. Lint described, there was no way to know from today's records whether the Grant of Easement had in fact been indexed in the grantor-grantee index back when the instrument was recorded. Mr. Lint disagreed, explaining:

> Prior to the subcontractor taking over, the county system was sort of a bifurcated system. There was the modern system that you see today, and it originated in 1972. Then there was a system that they had developed that went from '72, you know, back, which sort of eliminated the books from having to be searched.
>
> The two systems were merged, and the problems when they came to be from the subcontractor were almost all from that older system trying to move into the new system.
>
> I guess I'm not sure what — so this [Grant of Easement] being a more modern document from 1989, this wouldn't have had any of those problems that the older documents had. That stuff was pretty good. [N.T., 1/29/21, at 61.]

Mr. Lint acknowledged that the data trail of changes made in this process was in the custody of the County and that he had not reviewed it. [N.T., 1/29/21, at 61-62.]

Trial Ct. Op. at 24-25 (some record citations omitted).

The trial court, sitting as fact finder, found Mr. Lint's testimony to be "credible and authoritative." Trial Ct. Op. at 26. **See Stokes**, 783 A.2d at 297 (in non-jury trial, credibility determinations within the exclusive province of trial court). Specifically, the court credited Mr. Lint's opinion "that the Grant of Easement was timely recorded in the grantor-grantee index" and, because the document was recorded in 1989, it "'wouldn't have had any of those problems the older documents had.'" Trial Ct. Op. at 26 (record citation omitted). The court also noted that Mr. Proctor, PSDC's title search expert, did not dispute this testimony. **Id.** Thus, we agree with the trial court's determination that TSP provided sufficient proof that the Grant of Easement was properly cross-indexed in the alphabetical index and would have been discovered if a proper search had been conducted.[5]

With regard to PSDC's contention that the Grant of Easement is ambiguous because it did not refer to a plot or plan, the trial court concluded "the legal description of the metes and bounds of the easement, attached as Exhibit A to the Grant of Easement," sufficiently described the easement

_____

[5] PSDC appears to ignore the fact that the Grant of Easement was cross-indexed in the alphabetical grantor-grantee listing. For instance, it asserts "even if an investigator of title to the PSDC 1 [A]cre parcel found the grant, the discovery would have merely shown a document indexed against a parcel different from the parcel subject to the search and would only have show the Township." PSDC's Brief at 58. However, upon review of the document and the attached metes and bounds description, the investigator would have quickly ascertained that the 40-Foot Easement attached to PSDC's 1 Acre Property.

burdening the PSDC 1 Acre Property, and benefiting the Wawa Property. *See* Trial Ct. Op. at 18. The court found Mr. Proctor's testimony that a plot or plan was required to properly determine the location of the easement "wholly unpersuasive." *Id.* at 22. The court explained:

> [Mr. Proctor] plainly confirmed that if one were to prepare a plot of the metes-and-bounds description, it would show a 40-foot wide easement, just as stated in the beginning of the [document]. In view of that uncontested fact, the witness utterly failed to give a coherent explanation why a plot had to be included as part of the Grant of Easement. . . .
>
> PSDC has not cited, and the Court has not found, any case law holding that a metes-and-bounds description of the location of an easement is insufficient in the absence of an accompanying plan or plot. To the contrary, the law is that an express provision in an instrument on the width of an easement is valid and enforceable. ***Zettlemoyer v. Transcon. Gas Pipeline Corp.***, 657 A.2d 920, 924 (Pa. 1995) ("Where the width of an easement is unambiguously specified in the grant, the grantee is obviously restricted to that width even if it is insufficient for his purposes and enjoyment.").

*Id.* at 22-23. Again, it was within the trial court's discretion to reject Mr. Proctor's expert testimony, particularly when it contradicted the testimony of TSP's expert. *See Stokes*, 783 A.2d at 297. Furthermore, PSDC has similarly failed to provide any support for its assertion that the grant of an easement must be depicted in a plot or plan. Accordingly, PSDC's third claim fails.

## VIII. OVERBURDENING OF 35-FOOT EASEMENT

In its final claim, PSDC challenges the trial court's ruling that the redevelopment plan proposed by TSP will not overburden the 35-Foot

Easement over the Wawa Property that benefits the PSDC 5 Acre Property.[6]

**See** PSDC's Brief at 66. It argues TSP's proposal — which features the development of a gas station on the TSP Property and a convenience store on the Wawa Property — will "require[ ] constant pedestrian and vehicular traffic over and through the 35 foot easement[.]" **Id.** at 69. PSDC insists TSP's "proposed traffic control devices infringe upon [its] use of the easement" and the "incessant pedestrian traffic to and from the pumps and store" will "constructively block the easement." **Id.** It further argues the development, the modifications to the roadway, and the increased usage will "effectively foreclose[ ] through access to the dominate estate[ and will] materially limit PSDC's enjoyment of its access easement." **Id.** at 69-70.

As explained above, we interpret the language of an easement under general contract law. **See PARC Holdings, Inc.**, 785 A.2d at 112.

> [I]f the location, size or purpose of an easement is specified in the grant, then the use of an easement is limited to the specifications. If, however, the language of a granting deed is ambiguous regarding these matters, then the intent of the parties as to the original purpose of a grant is a controlling factor in determining the extent of an easement. Moreover, the intention of the parties is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending

---

[6] As explained supra, TSP contends the 35-Foot Easement was created only to benefit the PSDC 1 Acre Property, not the 5 Acre Property. **See** Trial Ct. Op. at 15. The trial court, however, dismissed that claim without prejudice, and TSP did not appeal that ruling. **See id.** at 16. Therefore, for the sake of this appeal, we will assume the 35-Foot Easement benefits both of PSDC's properties.

circumstances known to the parties at the time the grant was made.

*Id.* at 111 (citations and quotation marks omitted).

Furthermore, while grantors, *i.e.*, owners of the servient estate, retain the right to use the premises, their use "must be exercised in a manner consistent with the existing easement[; t]hey may use it as they choose but may not interfere with the proper and reasonable use by [the grantees] of their dominant right." **Taylor v. Heffner**, 58 A.2d 450, 454 (Pa. 1948) (owner of servient estate was not permitted to erect gates on easement benefiting dominant estate, which were kept locked when servient estate owner was using roadway). Our Supreme Court has stated: "Where an easement is concerned . . . the owners of the dominant and servient estates must not unreasonably interfere with each other's uses." **Kao v. Haldeman**, 728 A.2d 345, 349 (Pa. 1999). **See also Quasti v. N. Penn Sch. Dist.**, 907 A.2d 42, 48–49 (Pa. Commw. 2006) ("It has long been established in this Commonwealth that the owner of the servient estate retains all rights to use the property provided said uses do not unreasonably interfere with the rights granted to the owner of the dominant estate."),[7] *citing* **Taylor**, **supra**.

---

[7] We recognize this Court is not bound by decisions of the Commonwealth Court but we may consider such decisions for their "persuasive authority [and] guidance when appropriate." **Petow v. Warehime**, 996 A.2d 1083, 1089 n.1 (Pa. Super. 2010) (citation omitted).

In the present case, the trial court found TSP's proposed development plan would not overburden, or unreasonably interfere with, PSDC's use of the 35-Foot Easement. The court opined:

> As discussed above, TSP's development plan would make certain alterations to the 35-Foot Easement. Most significantly, TSP would install a "pork chop" that would require vehicles exiting from the 35-Foot Easement onto Forty Foot Road to make a right turn only. TSP would also install a crosswalk across the easement between the gas pump area and the new Wawa store, requiring vehicles to stop and yield to pedestrians using the crosswalk. More generally, as a result of the development of an expanded Wawa convenience store and the integration of the gas station and convenience store operations, an increase in the use of the easement by vehicles and in pedestrian crossings of the easement can be expected.
>
> While these alterations will result in some burden on PSDC's use of the 35-Foot Easement, the Court found that such burden would not be unreasonable. The evidence did not show that the increased vehicle and pedestrian traffic would be so great as to substantially interfere with PSDC's use of the easement. The two most significant alterations — the "pork chop" and the crosswalk — will enhance safety. The reduced driveway widths created by the pork chop would still be sufficient to permit ingress and egress by a tractor-trailer. The restriction requiring vehicles to turn right onto Forty Foot Road is the most salient modification, but its negative impact is mitigated by the availability of an alternative exit (via the 40-Foot Easement and Sumneytown Pike) for traffic going west onto Forty Foot Road.
>
> On balance, considering "the advantage to [TSP] of [its] desired use of the easement and the disadvantage to the owner of the easement [i.e., PSDC]," the Court concluded that the increased burden on PSDC's use of the 35-Foot Easement was reasonable.

Trial Ct. Op. at 28-29 (citation omitted).[8]

We conclude the court's findings are supported by the record. Preliminarily, we note that the 35-Foot Easement is described in the relevant deeds as an "access" easement. **See** Exhibit J-13, Deed from Third Federal to P.C. of Wawa Property, 7/19/74, at 2 (unpaginated); Exhibit J-17, Deed from Township to PSDC of PSDC 1 Acre and 5 Acre Properties, 5/10/06, Exhibit A (Legal Description) at 1 (unpaginated). TSP presented testimony that its proposed development will not unreasonably interfere with this use of the easement by PSDC.

Civil engineer John Hornick, who helped prepare the development plans, testified that even with the installation of the "pork chop" curb at Forty Foot Road, a tractor-trailer would still be able to enter and leave *via* the easement. **See** N.T., 1/28/21, at 169, 171, 201. He also stated that the proposed pedestrian crosswalk was not raised, but rather "standard" and "decorative in terms of appearance," with "pedestrian warning signage on either side of it." *Id.* at 200-01.

TSP also presented the testimony of Matthew Hammond, an expert in the field of traffic engineering and design. **See** N.T., 1/29/21, at 84. Mr. Hammond opined that from a traffic standpoint, "based on the roadway

---

[8] We note that, in its opinion, the trial court relied on law interpreting a prescriptive easement, as opposed to an express easement, as is at issue herein. **See** Trial Ct. Op. at 28, *citing* **Palmer v. Soloe**, 601 A.2d 1250 (Pa. Super. 1992).

improvements [in the TSP's development plan,] the driveways and the intersection of Forty Foot Road and Sumneytown Pike would continue to operate at acceptable levels and not cause any undue congestion on the roadways or driveways." *Id.* at 99. He also testified that if PSDC developed the PSDC 1 Acre Property "into a coffee shop or some other use" prior to TSP's proposed redevelopment, it was "likely" that the Township would still require the installation of the "pork chop" and elimination of the left turn exiting the 35-Foot Easement. *Id.* at 118.

PSDC presented no evidence rebutting these witnesses' testimony. Rather, it simply complains that the proposed development will "materially limit [its] enjoyment of its access easement." PSDC's Brief at 70. As fact finder, the trial court was free to credit the testimony of TSP's witnesses, rejecting PSDC's claims. *See Stokes*, 783 A.2d at 297. Thus, once again, PSDC is entitled to no relief.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2022

- 40 -